**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

OBAMA FOR AMERICA,      :  Case No. 2:12cv00636
DEMOCRATIC NATIONAL    :
COMMITTEE and        :
OHIO DEMOCRATIC PARTY,    :
                :
     Plaintiffs,      :
v.              :
                :
JON HUSTED, in his official capacity  :
as Ohio Secretary of State, and    :
MIKE DEWINE, in his official capacity :
as Ohio Attorney General,     :
                :
     Defendants.     :
                :

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, by their attorneys, file this complaint against Defendants and allege as follows:

### Nature of Action

1. Plaintiffs bring this lawsuit to restore in-person early voting for all Ohioans during the three days prior to Election Day – a right exercised by an estimated 93,000 Ohioans in the last presidential election. Ohio election law, as currently enacted by the State of Ohio and administered by Defendant Ohio Secretary of State, arbitrarily eliminates early voting during the three days prior to Election Day for most Ohio voters, a right previously available to all Ohio voters. This disparate treatment violates 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth

1

Amendment to the United States Constitution and can be rectified by the Court enjoining enforcement of statutory changes that eliminate early in-person voting for most Ohioans during the three days before an election.

2. Specifically, taken together, Amended Substitute House Bill Number 194 ("HB 194"), Amended Substitute House Bill Number 224 ("HB 224") and Substitute Senate Bill Number 295 ("SB 295"), all enacted by the 129th Ohio General Assembly, impose different deadlines for in-person voting prior to Election Day ("early voting") on similarly situated voters. Prior to the enactment of these laws, there was a single uniform deadline of the Monday before Election Day for in-person early voting. After the enactment of these laws, voters using the Uniformed and Overseas Citizens Absentee Voter Act ("UOCAVA") may vote early in-person at a board of elections office up through the Monday before Election Day, while non-UOCAVA voters can vote early in-person at a board of elections office (or designated alternate site) only up until 6 p.m. on the Friday before Election Day.

3. The differential treatment of UOCAVA and non-UOCAVA voters with respect to early voting appears to be the result of a confused legislative process initiated by the Ohio General Assembly after citizens of the State commenced the process to subject HB 194 to a referendum. HB 194 was a 300-page bill passed by a Republican-dominated legislature that limited voting rights in a number of respects, including by shortening the time period for early voting – an option more likely to be used by groups of voters that tend to support Democratic candidates. While the referendum

2

petitions on HB 194 were circulating, the Ohio General Assembly passed HB 224 with "technical corrections" to the early in person voting laws. Then, after Ohio citizens exercised their right to hold a referendum vote on HB 194 by qualifying for the general election ballot, the Ohio General Assembly passed SB 295 to repeal HB 194, but failed to also repeal the corresponding "technical corrections" made by HB 224 in the interim. Whether caused by legislative error or partisan motivation, the result of this legislative process is arbitrary and inequitable treatment of similarly-situated Ohio voters with respect to in-person early voting.

4. The Ohio General Assembly has failed to articulate any justification for this differential treatment of UOCAVA and non-UOCAVA voters, and no justification can be discerned. Indeed, these different deadlines exist despite the fact that, for purposes of in-person early voting, both UOCAVA and non-UOCAVA voters are identically situated, *i.e.*, they are qualified electors who are physically present in their home county when they desire to vote in-person at their county board of elections office prior to Election Day.

5. This inequitable approach to early voting will have a significant impact on voters. Between 2005 and 2011, Ohio successfully administered an early-voting system that included in-person voting in the three days prior to Election Day. This early voting system increased participation among voters, including those for whom work or family obligations make it difficult to vote on Election Day, and reduced the congestion that caused such severe waits during the 2004 presidential election in

3

Ohio that some citizens were effectively denied the right to vote. Indeed, as noted above, approximately 93,000 Ohioans voted in the three days prior to the 2008 presidential election. Now, as a result of HB 224 and SB 295, most Ohio voters will not be permitted to vote in the three days prior to Election Day for no apparent reason. Without early voting in these last three days before Election Day, tens of thousands of citizens who would have otherwise exercised their right to vote during this time period, including Plaintiffs' members and supporters, may not be able to participate in future elections at all.

6. This unequal burden on the fundamental right to vote violates the Equal Protection Clause of the United States Constitution. Plaintiffs have no plain, adequate, or complete remedy at law other than the relief requested in this Complaint. Unless the changes made to Ohio Rev. Code § 3509.03 by HB 224 and SB 295 are enjoined by this Court, Plaintiffs and the voters they represent will be directly and irreparably harmed in upcoming elections.

7. For these reasons and those specifically alleged herein, Plaintiffs seek a declaratory judgment, preliminary injunction, and permanent injunction prohibiting Defendants from implementing or enforcing the HB 224 and SB 295 changes to Ohio Rev. Code § 3509.03, thereby restoring in-person absentee voting on the three days immediately preceding Election Day for all Ohio voters.

**Parties**

8.  Plaintiff OBAMA FOR AMERICA is the principal campaign committee of
    President Barack Obama as he seeks re-election as President of the United States.
    Nearly 550,000 Ohio citizens voted for President Obama in the March 2012
    Democratic Primary.  Many of these voters will elect to cast their ballots early for
    the general election, but will be unable to do so in the three days prior to Election
    Day as a result of HB 224 and SB 295.  Obama for America is headquartered in
    Chicago, Illinois, and has offices in Ohio and throughout the country.

9.  Plaintiff DEMOCRATIC NATIONAL COMMITTEE is an unincorporated
    association, with its principal place of business in Washington, DC.  The Democratic
    National Committee ("DNC") is the governing body of the Democratic Party of the
    United States.  The DNC actively supports Democratic candidates in federal, state,
    and local elections in Ohio and throughout the nation, including by educating and
    organizing citizens to cast their votes for Democratic Party candidates.

10. Plaintiff OHIO DEMOCRATIC PARTY is a political party organization dedicated
    to electing candidates of the Democratic Party to public office throughout the State
    of Ohio.  The Ohio Democratic Party has hundreds of thousands of members from
    across the state, including many eligible voters, who regularly support and vote for
    candidates affiliated with the Ohio Democratic Party.  Many of these registered
    voters are likely to cast their votes during Ohio's early vote period.

5

11. As a result of the unequal early voting deadlines imposed by HB 224 and SB 295, Plaintiffs will be required to divert resources to voter education and turnout during a crucial time period. The confusion created by these various enactments, a referendum, and then repeal, has left voters uncertain about the state of affairs and possibly discouraged from voting. Plaintiffs will have to conduct significant voter outreach and education programs, which will require the diversion of personnel and financial resources, to explain to supporters that in-person early voting is no longer allowed in the last three days prior to Election Day and to encourage supporters to vote in the time periods available.

12. Many of Plaintiffs' members and supporters, which include Ohio registered voters, have previously cast their votes during the last three days of Ohio's early vote period. They will be significantly burdened in their ability to cast their ballots if they are unable to vote during the three days prior to the general election, and some will be unable to do so.

13. Defendant JON HUSTED ("Secretary of State" or "Defendant") is the Secretary of State of Ohio and is sued in his official capacity. Pursuant to Ohio Rev. Code § 3501.04, the Secretary of State is the chief election official of the State of Ohio, and, as such, is responsible for the administration of state laws affecting voting, and for assuring that elections in the state are conducted in accordance with the law. His principal office is in Columbus, Ohio.

14. Defendant MIKE DEWINE ("Attorney General" or "Defendant") is the Attorney General for the State of Ohio.  Pursuant to Ohio Rev. Code § 109.02, the Attorney General is the chief law officer of the State and represents the State of Ohio in all legal matters.

## Jurisdiction and Venue

15. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), 2201, and 2202, as well as 42 U.S.C. § 1983.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the direct and immediate harm faced by Plaintiffs and Plaintiffs' members and supporters is threatened in this judicial district, and both Defendants have their principal offices in this judicial district.

## Factual Allegations

A.    *Early Voting In Ohio*

17. Ohio has a history of troubled elections, most notably the 2004 Presidential race. The administration of that election in Ohio earned the State widespread notoriety for its seven plus hour lines to vote, machine shortages and malfunctions, and a wide assortment of other problems that led to the disenfranchisement of thousands of voters.

18. In *League of Women Voters of Ohio v. Brunner,* 548 F.3d 463 (6th Cir. 2008), the Sixth Circuit detailed the conditions described by the plaintiffs:

Voters were forced to wait from two to twelve hours to vote because of inadequate allocation of voting machines. Voting machines were not allocated

7

proportionately to the voting population, causing more severe wait times in some counties than in others. At least one polling place, voting was not completed until 4:00 a.m. on the day following election day. Long wait times caused some voters to leave their polling places without voting in order to attend school, work, or to family responsibilities or because a physical disability prevented them from standing in line. Poll workers received inadequate training, causing them to provide incorrect instructions and leading to the discounting of votes. In some counties, poll workers misdirected voters to the wrong polling place, forcing them to attempt to vote multiple times and delaying them by up to six hours. Provisional balloting was not utilized properly, causing 22% of provisional ballots cast to be discounted, with the percentage of ballots discounted reaching 39.5% in one county. Disabled voters who required assistance were turned away.

*Id. at* 477-78.

19. In 2005, through Substitute House Bill 234, Ohio enacted universal, also known as "no fault," absentee voting, in part to address problems from the 2004 election. The law allows voters to request an absentee ballot without stating a reason. Although it permits voters to cast their ballots by mail, it also provides the option of voting in person at a Board of Elections or other site designated by the Board of Elections prior to Election Day.

20. According to a study by the Ray C. Bliss Institute of Applied Politics at the University of Akron in 2011, the change to no fault absentee voting in Ohio led to a noticeable increase in early voting. *See* Ray C. Bliss Institute of Applied Politics at University of Akron, *A Study of Early Voting in Ohio*, located at http://www.uakron.edu/bliss/research/archives/2010/EarlyVotingReport.pdf, at 2. The Institute acquired the following information from the Ohio Secretary of State.

**Early Voting in Ohio, 2006, 2008, and 2010 (plus absentee votes in 2002, 2004)**

| Year | Number Absentee Voters | % of Registered Voters | % of Vote Cast |
|------|------------------------|------------------------|----------------|
| 2002 | 229,512 | 3.2% | 6.8% |
| 2004 | 607,636 | 7.6% | 10.6% |
| 2006 | 639,416 | 8.1% | 15.3% |
| 2008 | 1,717,256 | 20.7% | 29.7% |
| 2010 | 1,021,865 | 12.7% | 25.8% |

*Id.*

21. From 2002 to 2010 the number of early voters (both in person and by mail) increased from 229,512 to 1,021,865. *Id.* In 2008, over 490,000 people voted early in-person. *See* Testimony of Ellis Jacobs, Senior Attorney at Advocates for Basic Legal Equality, on March 21, 2012 (citing Data Compiled by Norman Robbins at Northeast Ohio Voter Advocates, *Elections are About Voters, but Legislative Measure Under Consideration Ignores Voting Preferences*). In 2010, 29.6% of the early votes were cast within one week of Election Day, making it the largest period of early voting. *See A Study of Early Voting in Ohio*, *supra*, at 5.

22. The last three days of early voting have a very high turnout rate. For the Presidential race in 2008, approximately 93,000 people voted in person during this period.

23. Based on 2010 numbers, the study also found that early voters are: 1) older than election-day voters; 2) much more likely to be women than election-day voters, and; 3) tend to have lower income than election-day voters. *See A Study of Early Voting in Ohio*, *supra*, at 14-16.

24. In testimony before the Ohio House of Representatives, Eric Marshall of the Lawyers' Committee for Civil Rights Under Law explained that early in-person voting in Ohio has led to the enfranchisement of "people who otherwise might not

9

vote at all, including those voters that have real difficulty getting to the polls on Election Day due to job or family commitments or transportation problems." Eric Marshall Testimony (May 10, 2011). Marshall also noted that such "Early voting…provides critical relief to ease congestion and burdens at the polls on Election Day," which is crucially important in light of Ohio's "history of long lines and Election Day confusion and break downs." *Id.*

B. *Enactment of HB 194*

25. HB 194, an omnibus election law bill, was signed into law by Governor Kasich on July 1, 2011, with an effective date of September 30, 2011.

26. Among the many changes in HB 194 was the attempted removal of the last three days of early voting prior to Election Day. Ohio Rev. Code § 3509.01. The bill also contained other measures limiting voters' rights. For example, the bill eliminated the requirement that poll workers direct voters to the correct precinct and inform them that their ballots are not counted if they vote at an incorrect location. Ohio Rev. Code § 3505.181. Furthermore, it prohibited boards of elections from mailing absentee voter forms to voters or pay the return postage on such forms. Ohio Rev. Code § 3509.03.

27. While the bill was pending in the General Assembly, testimony was offered against it. For example, Eric Marshall testified that reducing the early vote period will "make it less likely that some Ohio residents will exercise that right" to vote. *See* Eric Marshall Testimony (May 10, 2011).

28. Votes in both the House and the Senate split along party lines with Republicans voting in favor and Democrats against the bill.

C.    *Referendum of HB 194*

29. After HB 194 was enacted, Democratic legislators, voting rights advocates, labor unions, and progressive organizations began gathering signatures to put the measure to a referendum pursuant to the Ohio Constitution. Under Article II, Section 1 of the Ohio Constitution, the people of Ohio have the power to "adopt or reject [general assembly laws] at the polls on a referendum vote." Supporters of the referendum needed 231,150 voters to sign the petition; they were able to amass over 300,000 signatures from the citizens of Ohio. In addition, they were required to collect signatures from at least 44 of Ohio's 88 counties, and within each of those counties collect signatures equal to three percent of the total vote cast for governor in the 2010 gubernatorial election; they were able to meet or exceed the three percent threshold in 64 counties. *See* http://www.sos.state.oh.us/mediaCenter/2011/2011-12-09.aspx.

30. On December 9, 2011, the Secretary of State certified the referendum. As a result, HB 194 would not be effective until a majority of the electors approve it. The referendum is expected to be on the ballot in November 2012.

D.    *Enactment of HB 224*

31. In the interim period while signatures on the referendum were being gathered, yet another election law bill was passed: HB 224, which was signed by Governor

11

Kasich on July 27, 2011.[1]  Although the bill focused primarily on easing burdens for absent military and overseas voters subject to UOCAVA, another purpose of the bill was "to make technical corrections to the laws governing elections." *See* HB 224.

32. Technical corrections were necessary because, as a result of legislative oversight in HB 194, two sections of the Revised Code dealing with the deadline for in-person early voting for non-UOCAVA voters were inconsistent with each other.  HB 194 had added totally new language to Ohio Rev. Code § 3509.01 ending the in-person early voting period for non-UOCAVA voters on the Friday before the election at 6 p.m, even though the existing deadline was contained in a different section of the Revised Code.  The General Assembly did not change the language in Ohio Rev. Code § 3509.03; that provision set the end time for in-person early voting by non-UOCAVA voters at close of business the day before an election.  HB 224 included technical amendments to Ohio Rev. Code § 3509.03 to bring this provision of the Code in line with HB 194, *i.e.*, it moved the deadline to Friday at 6 p.m.

33. HB 224 also included technical corrections related to the deadline for early in person voting by UOCAVA voters.  HB 194 had apparently sought to change the in-person early voting deadline for UOCAVA voters to also be the Friday before the election by amending Ohio Rev. Code § 3511.10.  However, it did not amend Ohio Rev.

---

[1]     Despite the fact that HB 224 imposed similar restrictions on early voting as those contained in HB 194, HB 224 was not subject to referendum because it was enacted as an emergency bill and thus was exempt under Article II, Section 1(d) of the Ohio Constitution.

Code § 3511.02, which permitted in-person early voting by UOCAVA voters through the day before the election.  In HB 224, the Ohio General Assembly included a technical correction to Ohio Rev. Code § 3511.02 to also shorten the deadline for UOCAVA voters to the Friday before the election.

E.  *Enactment of SB 295 to Repeal HB 194*

34. In January 2012, after the passage of HB 224 and the certification of the referendum petition on HB 194, the Secretary of State and Republican members of the General Assembly announced a plan to repeal HB 194 while it was awaiting a referendum by the people.  Senate President Tom Niehaus informed the public that the Senate planned to repeal the bill and then replace it with a new bill that would include many of the same provisions and restrictions.  *See* Sen. Neihaus Statement on Repeal of Election Reform Bill (Feb. 9, 2012), available at http://www.ohiochannel.org/MediaLibrary/Media.aspx?fileId=134410 (last visited July 12, 2012); Joe Guillen, *Ohio Senate Republicans plan to repeal controversial elections law*, Cleveland Plain Dealer (Feb. 9, 2012), available at http://www.cleveland.com/open/index.ssf/2012/02/ohio_senate_republicans_plan_t. html (last visited July 12, 2012).  The repeal bill, SB 295, unprecedented in Ohio history, was passed by the General Assembly on May 8, 2012 and signed by the Governor on May 15, 2012.

35. Although SB 295 effectively repealed the changes made to the in-person early voting deadlines by HB 194 by eliminating the new more restrictive language in Ohio Rev.

13

Code § 3509.01, it did not repeal the conforming changes made by HB 224 to Ohio Rev. Code §§ 3509.03 and 3511.02.  As a result, following the passage of HB 224 and SB 295, one in-person early voting deadline exists for non-UOCAVA voters:  6 p.m. on the Friday before an election.  Ohio Rev. Code § 3509.03 (as amended by HB 224).  But two in-person early voting deadlines exist for UOCAVA voters:  6 p.m. on the Friday before an election, Ohio Rev. Code § 3511.02 (as amended by HB 224) and the close of the polls on Election Day, Ohio Rev. Code § 3511.10 (following the repeal of HB 194 by SB 295).  The Ohio General Assembly has not articulated any justification for the differential treatment of these two groups of voters who are identically situated with respect to early in-person voting.  Nor has the General Assembly addressed the conflicting deadlines for UOCAVA voters.

F.     *Secretary of State's Advisory*

36. Even before the passage of SB 295, however, it was clear that there would be conflicting deadlines for in-person early voting if the referendum petition on HB 194 was successful (and the effective date of HB 194 was suspended as a result).  On October 14, 2011, the Secretary of State issued Advisory 2011-07 to the County Boards of Elections, in part to address conflicting early voting deadlines.  According to the Advisory: "In-person absentee voting ends at 6 p.m. the Friday before the election for non-uniformed military and overseas voters.  Ohio Rev. Code 3509.03." The Advisory provided a different end time for UOCAVA voters.  It noted that those "voters may vote in-person absentee until the close of the polls on the day of the

14

general or primary election.  They must vote at the board of elections office between 6 p.m. the Friday before the election and the close of the polls on the day of the election.  Ohio Rev. Code 3511.10."  In essence, the Secretary of State appropriately resolved the conflict between the two in-person early voting deadlines for UOCAVA voters in favor of the more generous time period.[2]

37. On October 25, 2011, the Secretary of State sent a letter to the Director and Deputy Director of the Montgomery County Board of Elections in response to a tie vote at that Board as to whether to extend its regular business hours to permit non-UOCAVA in-person absentee voting on the Saturday through the Monday prior to the November election.  The Secretary of State broke the tie against the motion to permit in-person absentee voting for non-UOCAVA voters during this time period.

38. The Secretary of State denied a similar motion on October 27, 2011, for the Darke County Board of Elections.  In both instances he cited to Ohio Rev. Code § 3509.03 as prohibiting him from authorizing voting during this window of time for non-UOCAVA voters.

39. Following the Secretary of State's Advisory, protests ensued at a number of county boards of elections.  Democratic lawmakers also contacted the Secretary of State, asking him to reinstate in-person early voting at county Boards of Elections through the Monday before the election.  The Secretary of State refused these requests.  *See*

---

[2]    Because the referendum on HB 194 and the repeal of 194 by SB 295 have the same practical effect, the Advisory remains in effect.

Press Release, *House Democratic Caucus Communications, Dem Lawmakers Tell Secretary Husted Don't Cut Off Early Voting* (Oct. 15, 2011), available at http://www.rotundacollection.com/ShowDocument.aspx?PressReleaseID=68.1

40. The concern about having two classes of voters with different access to the polls was raised several times through legislative testimony.  For example, Carrie L. Davis, Executive Director of the League of Women Voters of Ohio, brought it to the General Assembly's attention in her legislative testimony on March 21, 2012.  Davis explained the history of HB 194 and HB 224 and the confusion that resulted from the conflicting provisions.  She warned the General Assembly, "Passing a straight repeal of provisions that were only in HB 194 without addressing the 'technical changes' made in HB 224 continues the inconsistency problem, wherein sections of the voting law conflict with one another."  The General Assembly did not address these issues.

41. Also, in both the Senate and House, Democrat-sponsored amendments to return voting to the status quo – as it existed prior to HB 194 – which would extend early voting through the three days prior to Election Day for all eligible Ohio voters. These amendments were voted down by the Republican-controlled majority in both chambers.

42. As a result of the confused state of the Ohio election law on early voting, Plaintiffs will be forced to spend considerable resources educating their members and supporters about the early voting deadlines and encouraging them to vote.

43. Because so many Ohioans rely on the early vote period, specifically the last three days before an election, to cast their ballot, and are unable to wait on the long lines that have historically plagued federal elections in Ohio, they will be unable to vote, unless an injunction issues against the amendments to Ohio Rev. Code § 3509.03 made by HB 224 and SB 295 that eliminate early voting during the three days prior to Election Day.  *See* Testimony of Eric Marshall, Manager of Legal Mobilization, Lawyers' Committee for Civil Rights Under Law, on May 10, 2011.

## CAUSE OF ACTION
### (Violation of 42 U.S.C. § 1983 and the Fourteenth Amendment)

44. Plaintiffs reallege each allegation contained in each of the paragraphs above as if fully set forth herein.

45. The Constitution of the United States protects the right of all qualified citizens to vote in elections for federal office.  The right to vote, one of the most important rights in our democratic society, is fundamental.  It is protected by Articles I and II of the Constitution, the First and Fourteenth Amendments, and numerous federal statutes.

46. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution guarantees qualified voters a substantive right to participate equally with other qualified voters in the electoral process.  This equal right to vote is protected in more than the initial allocation of the franchise; equal protection applies to the manner of its exercise as well.  *See Hunter v. Hamilton County Bd. of Elections*, 635 F.3d 219, 234 (6th Cir. 2011) (quoting *Bush v. Gore*, 531 U.S. 98,

17

104 (2000)). A state may not arbitrarily impose disparate treatment on similarly situated voters.

47. Thus, once the State of Ohio decides to provide voters with the right to vote early, it cannot arbitrarily grant that right to some voters and not others.

48. The passage of HB 224 and SB 295 created different in-person early voting deadlines for two groups of voters: UOCAVA voters may vote early up to the close of polls on Election Day, but non-UOCAVA voters may only vote early up to 6 p.m. on the Friday before Election Day. This disparate treatment of UOCAVA and non-UOCAVA voters is arbitrary: The Ohio General Assembly has not and cannot articulate any legitimate justification for the different deadlines. Both groups of voters are similarly situated: they are qualified electors physically present in their home county who must appear in person at the offices of the board of election in order to vote early.

49. Ohio has successfully administered early voting for five years, and there is no indication that the last three days of early voting caused any problems in election administration or voter fraud. To the contrary, the enactment of no fault absentee voting and this early vote window, particularly the three days prior to an election, has ameliorated many problems Ohio previously faced, such as unacceptably long voting lines on Election Day.

50. At best, the disparity is simply the inadvertent result of legislative confusion that left in place two different deadlines for UOCAVA and non-UOCAVA voters, and even

18

two deadlines for UOCAVA voters.  At worst, the differential treatment has been influenced by partisan politics.  Neither scenario presents a legitimate justification for the disparate treatment.

51. Even if the Ohio General Assembly could articulate a legitimate justification for the disparate treatment, any such reason would not outweigh the burden placed on most, but not all, Ohio voters who have been denied the right to vote in the three days prior to an election.

52. Thousands of Ohio voters, including Plaintiffs' members and supporters, will suffer direct and irreparable injury from this differential treatment.  These voters may effectively lose the opportunity to vote if they do not have the ability to do so in the three days prior to the election, a time period when turnout has been particularly heavy in the past.

53. By reason of the foregoing, Defendants, acting under color of state law, have deprived and will continue to deprive Plaintiffs of equal protection under the law secured to them by the Fourteenth Amendment to the United States Constitution and protected by 42 U.S.C. § 1983.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request of this Court the following equitable relief:

A. An order declaring that lines 863 and 864 of Sec. 3509.03(I) in HB 224, which amended Ohio Revised Code § 3509.03 by changing the deadline for in-person early voting from the close of business on the day before Election

Day to 6 p.m. on the Friday before Election Day, and the SB 295 enactment of Ohio Revised Code § 3509.03 with the HB 224 amendments, violate the Equal Protection Clause of the United States Constitution;

B. A preliminary and permanent order prohibiting the Defendants, their respective agents, servants, employees, attorneys, successors, and all persons acting in concert with each or any of them, from implementing or enforcing lines 863 and 864 of Sec. 3509.03 (I) in HB 224, and/or the SB 295 enactment of Ohio Revised Code § 3509.03 with the HB 224 amendments, thereby restoring in-person early voting on the three days immediately preceding Election Day for all eligible Ohio voters;

C. Attorney fees and costs;

D. Such other and further relief as this Court may deem necessary or proper.

Respectfully submitted,

/s/ DONALD J. McTIGUE

_____
Donald J. McTigue (0022849)
Trial Counsel
Mark A. McGinnis (0076275)
J. Corey Colombo (0072398)
McTigue & McGinnis LLC
545 East Town Street
Columbus, Ohio 43215
Tel: (614) 263-7000
Fax: (614) 263-7078
dmctigue@electionlawgroup.com
mmcginnis@electionlawgroup.com
ccolombo@electionlawgroup.com

20

*Attorneys for Plaintiffs*

Robert F. Bauer*
Perkins Coie
700 Thirteenth Street, Suite 600
Washington DC 20005
Tele: 202-434-1602
Fax: 202-654-9104
RBauer@perkinscoie.com

*General Counsel for Plaintiffs Obama for America and the Democratic National Committee*

Jennifer Katzman*
Obama for America
130 East Randolph
Chicago, IL 60601
Tele: 312-985-1645
jkatzman@barackobama.com

*National Voter Protection Counsel for Plaintiff Obama for America*


\* Motions for Admission *Pro Hac Vice* forthcoming