**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| OBAMA FOR AMERICA, DEMOCRATIC NATIONAL COMMITTEE, and OHIO DEMOCRATIC PARTY, | ) ) ) ) | |
| | ) | Case No. 2:12-CV-00636 |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Judge Peter C. Ecnomus |
| | ) | Magistrate Norah McCann King |
| JON HUSTED, in his official capacity as Ohio Secretary of State, and MIKE DEWINE, in his official capacity as Ohio Attorney General, | ) ) ) ) ) | |
| *Defendants*, | ) ) | **MILITARY GROUPS' MOTION TO INTERVENE** |
| NATIONAL GUARD ASSOCIATION OF THE UNITED STATES; ASSOCIATION OF THE U.S. ARMY; ASSOCIATION OF THE U.S. NAVY; MARINE CORPS LEAGUE; MILITARY OFFICERS ASSOCIATION OF AMERICA; RESERVE OFFICERS ASSOCIATION; NATIONAL ASSOCIATION FOR UNIFORMED SERVICES; NON COMMISSIONED OFFICERS ASSOCIATION OF THE USA; ARMY RESERVE ASSOCIATION; FLEET RESERVE ASSOCIATION; SPECIAL FORCES ASSOCIATION; U.S. ARMY RANGER ASSOCIATION, INC.; AMVETS; NATIONAL DEFENSE COMMITTEE; MILITARY ORDER OF THE WORLD WARS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Putative Defendant-Intervenors*. | ) ) | |

## MILITARY GROUPS' MOTION TO INTERVENE

Putative Defendants National Guard Association of the United States (NGAUS); Association of the U.S. Army (AUSA); Association of the U.S. Navy (AUSN); Marine Corps League; Military Officers Association of America (MOAA); Reserve Officers Association (ROA); National Association for Uniformed Services (NAUS); Non Commissioned Officers Association of the USA (NCO); Army Reserve Association; Fleet Reserve Association (FRA); Special Forces Association (SFA); U.S. Army Ranger Association, Inc.; and Military Order of the World Wars (MOWW); AMVETS; and National Defense Committee (NDC) (collectively,"**Intervenors**") respectfully move this Court, pursuant to Fed. R. Civ. P. 24(a) and (b) for entry of an order granting leave to intervene in this action, substantially in the form submitted contemporaneously with this Motion.

As grounds, Intervenors state that Plaintiffs seek injunctive relief that would adversely impact the interests of its members.  Further, Intervenors are not adequately represented in this case and their abiliy to protect their interests will be impaired absent intervention.  The grounds for this Motion are more fully set forth in the accompanying Memorandum in Support, which is incorporated herein by this reference.    A proposed Memorandum in Opposition to Plaintiffs' Motion for a Preliminary Injunction, as well as proposed Motion to Dismiss and supporting memorandum, are attached hereto as Exhibits 1 and 2, respectively, consistent with Fed. R. Civ. P. 24(c).

Dated:  August 1, 2012                          Respectfully submitted,


                                                */s/Kevin T. Shook*_____
                                                 Kevin T. Shook (0073718) (Trial Attorney)
                                                Jill Meyer (0066326)
                                                FROST BROWN TODD LLC
                                                10 West Broad Street, Suite 2300
                                                Columbus, Ohio  43215
                                                Telephone:  (614) 559-7214
                                                Facsimile:  (614) 464-1737
                                                Email:  kshook@fbtlaw.com
                                                        jmeyer@fbtlaw.com
                                                *Attorneys for Putative Intervening Defendants*


                                                Thomas E. Wheeler, II, #13800-49
                                                FROST BROWN TODD LLC
                                                201 North Illinois Street, Suite 1900
                                                P.O. Box 44961
                                                Indianapolis, IN  46244-0961
                                                317-237-3800
                                                Fax: 317-237-3900
                                                twheeler@fbtlaw.com

                                                *Counsel for Putative Intervening Defendants*
                                                *(Motion for Admission Pro Hac Vice forthcoming)*

## MEMORANDUM IN SUPPORT

### INTRODUCTION

The principal campaign committee of President Barack Obama, the Commander-in-Chief of the U.S. Armed Forces, is arguing before this Court that the State of Ohio has violated the U.S. Constitution by giving members of the Armed Forces—who serve under his command, and risk their lives pursuant to his orders—three extra days to participate in early voting. Complaint, Dock #1, ¶¶ 6, 8 (July 17, 2012) (hereafter, "Compl."). The Obama campaign and Democratic National Committee contend that they cannot "discern[]" any "legitimate justification" for giving members of the military extra time to participate in early voting. *Id*. ¶¶ 4, 48.

This Motion to Intervene is brought on behalf of 15 military organizations that collectively represent nearly a million members of the Army, Navy, Air Force, and Marine Corps, including members of the Active Duty, Reserve, National Guard, and Retired Components. The Intervenors respectfully request the opportunity to participate in this lawsuit to defend the fundamental constitutional right to vote of members of the U.S. Armed Forces, which includes the right to receive special accommodations, flexibility, and extra time to facilitate their voting, whether absentee or in-person. Although the ***relief*** Plaintiffs seek is an overall extension of Ohio's early voting period, the ***means*** through which Plaintiffs are attempting to attain it—a ruling that it is arbitrary and unconstitutional to grant extra time for early voting solely to military voters and overseas citizens—is both legally inappropriate and squarely contrary to the legal interests and constitutional rights of Intervenors, their members, and the courageous men and women of the U.S. Armed Forces.

4

## THE UNDERLYING LITIGATION

Plaintiffs Obama campaign, Democratic National Committee, and Ohio Democratic Party challenge various provisions of Ohio law that, as interpreted by Defendant Secretary of State Jon Husted, allow military voters "to vote early in-person at a board of elections office up through the Monday before Election Day," but permit civilians to do so "only up until 6 p.m. on the Friday before Election Day."  Compl. ¶¶ 2, 48.  Plaintiffs argue that the State "has failed to articulate any justification for this differential treatment" of military and non-military voters, "and no justification can be discerned."  *Id*. ¶¶ 4, 48.  They conclude that "[t]his unequal burden on the fundamental right to vote violates the Equal Protection Clause of the United States Constitution."  *Id*. ¶ 6.  Plaintiffs seek a declaration that the state law which treats civilian voters differently from military voters in this respect is unconstitutional, *id*. p. 19, and an injunction requiring that the extra time afforded to military voters be extended to all voters, *id*. p. 20.

## PUTATIVE INTERVENORS

Intervenors are military groups dedicated to promoting the interests of members of the U.S. Armed Forces.  Their members include Soldiers, Sailors, Airmen, and Marines; officers and enlisted personnel; and members of the Active Duty, Reserve, National Guard, and Retired Components.  They live and serve throughout the State of Ohio, across the nation, and around the world.

Among other things, these groups work to ensure that the fundamental constitutional right to vote of members of the military is not limited, denied, or abridged, and that all military personnel are given adequate opportunity to exercise their franchise.  Many of these groups have lobbied Congress to enact crucial protections for military voters such as the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), Pub. L. 99-410, 100 Stat. 924 (Aug. 28,

5

1986), and the Military and Overseas Voter Empowerment ("MOVE") Act, Pub. L. 111-84, 123 Stat. 2190 (Oct. 28, 2009).

- The *National Guard Association of the United States* ("NGAUS"), created in 1878, includes nearly 45,000 current and former Guard officers and provides unified Guard representation in Washington, D.C.  It lobbies Congress and the Executive Branch to obtain modern equipment, training, missions, and personnel benefits for the Army and Air National Guard, and to protect their voting rights.  It also seeks to promote, encourage, and assist members of the National Guard in registering to vote and voting.  *See* http://www.ngaus.org.

- The *Association of the United States Army* ("AUSA"), founded in 1950, is a private, non-profit educational organization that supports America's Army.  It represents every American Soldier by being the voice for all components of America's Army, fostering public support of the Army's role in national security, and providing professional education and information programs.  It also provides recreational and educational opportunities to Soldiers and their families worldwide, seeks to promote their voting rights, and both encourages and attempts to facilitate voting by members of the Army and their families.  *See* http://www.ausa.org.

- The *Association of the United States Navy* ("AUSN"), founded in 1955, promotes the interests of Navy service members and their families by writing to the President, hosting House and Senate meetings, working with key Members of Congress, and encouraging members to support key legislation, including laws concerning voting rights.  Comprised of over 20,000 members, the AUSN also encourages the professional development of officers and enlisted personnel, and educates the public and government officials regarding the nation's welfare and security. *See* http://www.ausn.org.

6

●   The *Marine Corps League* (the "League") is a 501(c)(4) nonprofit organization, founded in 1923 and chartered by Congress in 1937.  With more than 76,000 members, the League perpetuates the traditions of the Marine Corps; renders assistance to Marines, as well as their widows and orphans; aims to maximize voting by Marines and their families; and provides volunteer assistance at veterans hospitals.  The League also assists veterans in obtaining benefits; sponsors the Young Marines, a physical fitness program, and scholarships for youths; and represents the interests of Marines before Congress concerning military readiness, benefits, entitlements, and voting rights. *See* http://www.mcleague.com.

●   The *Military Officers Association of America* ("MOAA") is the nation's largest association of military officers, founded in 1929, with 370,000 members from all branches of service.  It is an independent, nonprofit, politically nonpartisan organization dedicated to maintaining a strong national defense, and plays an active role in proposed legislation affecting the career force, the retired community, and veterans of the uniformed services.  The MOAA also offers career transition assistance, military benefits counseling, educational assistance to children of military families, and military professionalism activities.  *See* http://www.moaa.org.

●   The *Reserve Officers Association* ("ROA") is a 60,000-plus member professional association for all uniformed services of the United States.  Created in 1922 and chartered by Congress in 1950, the ROA supports and promotes the development and execution of a military policy for the United States that will provide adequate national security.  It provides professional development workshops, mentoring programs, and a career center to meet the unique needs of military Reservists.  It advocates for equipment, training, recruitment, and retention incentives, and employment rights for the Reserve Components, and offers expert legal information on

various federal statutes of particular importance to Reservists, including those concerning voting and voting rights.  *See* http://www.roa.org.

● The *National Association for Uniformed Services* ("NAUS") was founded in 1968 to protect and enhance the rights and earned benefits of uniformed servicemembers, retirees, veterans, and their families and survivors, while maintaining a strong defense.  It also seeks to foster e*sprit de corps* among uniformed services personnel and veterans of the United States, through nonpartisan advocacy on Capitol Hill and with other government officials.  Among other things, the NAUS is very concerned with military voting rights, and works to ensure that all members of the military exercise their franchise.  *See* http://www.naus.org.

● The *Non Commissioned Officers Association of the USA* ("NCOA") was established in 1960 and congressionally chartered in 1988 to enhance and maintain the quality of life for noncommissioned and petty officers in all branches of the Armed Forces, including the National Guard and Reserves.  The NCOA offers a wide range of benefits, services, and programs designed especially for enlisted service members and their families.  *See* http://www.ncoausa.org.

● The *Army Reserve Association* ("ARA") is a private, non-profit educational organization formed in 1993 that supports America's Army as well as members of the U.S. Army Reserves of all ranks.  The ARA represents the interests of both the Army Reserve Component and its members before Congress, the Department of Defense, and the Department of the Army.  Among other things, it is deeply concerned about the voting rights of the members of the Army community, encourages its members to exercise those rights, and seeks to protect them before both the legislative and executive branches.  *See* http://www.armyreserve.org.

●      The *Fleet Reserve Association* ("FRA") is a congressionally chartered, non-profit organization that represents the interests of the Sea Service community before Congress.  The FRA lobbies Congress on behalf of Sea Service Personnel, presents legislative seminars about key bills on Capitol Hill, and sponsors patriotism essay awards and scholarships.  See http://www.fra.org.

●      The *Special Forces Association* ("SFA") serves as the voice of the Special Forces community, perpetuates Special Forces traditions and brotherhood, advances the public image of Special Forces, and promotes the general welfare of the Special Forces community.  It is especially concerned about maximizing opportunities for voting for the men and women of U.S. Special Forces, who often face a range of unusual and predictable obstacles in attempting to exercise that right.  *See* http://www.specialforcesassociation.org.

●      The *U.S. Army Ranger Association, Inc.* ("USARA") is a § 501(c)(19) tax-exempt organization dedicated to promoting and preserving the heritage, spirit, image, and service of U.S. Army Rangers.  It participates in many Ranger community causes such as the Ranger Memorial Foundation, Ranger Hall of Fame and Best Ranger Competition; provides scholarships to Rangers' dependents; and offers emergency financial assistance to Rangers and families of deceased Rangers.  *See* http://www.ranger.org.

●      The *Military Order of the World Wars* ("MOWW") is a congressionally chartered nonpartisan organization established in 1919 to promote the nation's welfare; preserve the memories of the World Wars; inculcate love of country and flag; defend the integrity and supremacy of the federal government and the U.S. Constitution; and encourage and assist in the holding of commemorations and the establishment of memorials of the world wars.  The

MOWW is open to all officers of the federal uniformed services. *See* http://www.militaryorder.net.

- *AMVETS* is a congressionally chartered veterans service organization with a proud history of assisting veterans and sponsoring programs that serve the United States and its citizens. It has approximately 180,000 members; membership is open to anyone who is currently serving, or who has honorably served, in the U.S. Armed Forces. AMVETS maintains a network of national service offices accredited by the Department of Veterans Affairs to provide advice and action on veterans' compensation claims at no charge to the veteran. It also lobbies Congress on behalf of veterans, provides companionship to hospitalized and disabled veterans, and supports community programs. *See* http://www.amvets.org.

- *National Defense Committee* ("NDC") is a grass roots military service organization, focused on protecting and expanding the individual civil rights of military service members, improving the civil-military relationship, and preserving an effective national security and homeland defense posture. National Defense Committee is at the forefront of military voting rights issues. Its Chairman, Rear Admiral James J. Carey, USN (Ret.), also serves as Executive Director of the Alliance for Military and Overseas Voting Rights, and has testified before numerous State legislatures on needed improvements in individual State military voting laws. NDC's prior Executive Director and current Senior Fellow, Bob Carey, served as Director of the Federal Voting Assistance Program in the Department of Defense from 2009 to 2012. *See* http://www.nationaldefensecommittee.org.

10

## ARGUMENT

This Court should allow Intervenor Military Groups to participate in this case to help protect their members' fundamental constitutional right to vote—both in Ohio and more generally—by establishing that it was neither arbitrary nor unconstitutional for the State and Secretary Husted to give members of the military three extra days to participate in early voting. The Intervenor Military Groups bring undeniable expertise and a crucial new perspective to this case, and their participation w ill not prejudice the existing parties.  Consistent with Fed. R. Civ. P. 24(c), Intervenors' proposed Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction is attached as Exhibit 1, and proposed Motion to Dismiss and supporting memorandum is attached as Exhibit 2.

## I.      INTERVENORS ARE ENTITLED TO PARTICIPATE IN THIS CASE AS OF RIGHT

This Court should allow Intervenor Military Groups to participate in this case as of right, under Fed. R. Civ. P. 24(a).  That rule provides:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).  The Military Groups satisfy all four prongs of this test.

### A.      The Motion to Intervene is Timely

First, Intervenors' Motion is timely.  It comes barely two weeks after the Complaint was filed, *see* Compl., Dock. #1 (July 17, 2012), and is consistent with this Court's scheduling order on Plaintiffs' Motion for a Preliminary Injunction, *see* Order, Dock. #7 (July 20, 2012).  *See Great Am. Assur. Co. v. Travelers Prop. Cas. Co.*, No. 1:06-CV-378, 2007 U.S. Dist. LEXIS

11

4124, at \*5-6 (S.D. Ohio Jan. 19, 2007) (holding that a motion to intervene filed two-and-a-half months after the complaint was timely).  "[G]iven the rapidity with which movants entered the case . . . the minimal resources expended [so far] in litigating the case, and the absence of prejudice to [plaintiffs] in granting the motion, the . . . motion to intervene [is] timely." *Chubb Ins. Co. of Eur. SE v. Zurich Am. Ins. Co.*, No. 1:09-MC-0116, 2010 U.S. Dist. LEXIS 7200, at \*11 (N.D. Ohio Jan. 28, 2010).

### B.    Intervenors Have a Substantial Legal Interest In This Case

Intervenors also claim a "substantial legal interest in the case." *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997).  The Sixth Circuit has adopted "'a rather expansive notion of the interest sufficient to invoke intervention of right.'"  *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 315 (6th Cir. 2005), *quoting Miller*, 103 F.3d at 1245; *see also Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) ("'[I]nterest' is to be construed liberally.").  Most notably, "an intervenor need not have the same standing necessary to initiate a lawsuit in order to intervene in an existing district court suit where the plaintiff has standing." *Id*.  The Court also has "'reject[ed] the notion that Rule 24(a)(2) requires a specific legal or equitable interest.'"  *Miller*, 103 F.3d at 1245, *quoting Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991).  Furthermore, "'close cases should be resolved in favor of recognizing an interest under Rule 24(a).'"  *Grutter v. Bollinger*, 188 F.2d 394, 399 (6th Cir. 1999), *quoting Miller*, 103 F.3d at 1247.

Intervenors have a substantial legal interest in this case in three respects.   **First**, Intervenors seek to protect the rights of their members who are registered to vote in Ohio. Organizations may intervene in litigation on behalf of their members to protect their members' legal interests.  *See Dow Chem. Co. v. Taylor*, 519 F.2d 352, 353 (6th Cir. 1975) (noting that a

union "was granted to intervene as a defendant to protect the interests of [its] members"); *see also Youngblood v. Dalzell*, 925 F.2d 954, 957 n.1 (6th Cir. 1991) (same); *D.M. v. Butler Cnty. Bd. of Mental Retardation and Dev. Disabilities ("MR/DD")*, No. 08-399, 2008 U.S. Dist. LEXIS 92843, at *5 (Nov. 14, 2008) (noting that the Ohio Association of County Boards of MR/DD was permitted "to intervene on behalf of its members").

If this Court concludes that Ohio's early voting law violates the Equal Protection Clause, U.S. Const., amend. XIV, one remedy it reasonably may consider imposing—and which the State itself may advocate—would be to reduce the time period for early voting by members of the military to the earlier civilian deadline. The U.S. Supreme Court has held, "[W]e have never suggested that the injuries caused by a constitutionally underinclusive scheme can be remedied only by extending the program's benefits to the excluded class." *Heckler v. Matthews*, 465 U.S. 728, 738-39 (1984) (citations omitted).

A court facing an Equal Protection claim has "'two remedial alternatives: [it] may either declare [the statute] a nullity and order that its benefits ***not*** extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by the exclusion." *Id.* at 738-39 (citations omitted and emphasis added), *quoting Welsh v. United States*, 398 U.S. 333, 361 (1970) (Harlan, J., concurring); *see also Davis v. Mich. Dep't of Treas.*, 489 U.S. 803, 817-18 (1989); *Levin v. Comm. Energy, Inc.*, 130 S. Ct. 2323, 2333 (2010) ("How equality is accomplished—by extension or invalidation of the unequally distributed benefit or burden, or some other measure—is a matter on which the Constitution is silent."). Thus, a plaintiff's success in an Equal Protection case reasonably may lead to "withdrawing the statute's benefits from both the favored and the excluded class." *Heckler*, 465 U.S. at 739; *accord Jelovsek v. Bredesen*, 545 F.2d 431, 439 (6th Cir. 2008).

Intervenors therefore need to participate in both the liability phase and any remedial phase of these proceedings to protect their Ohio members' interests by ensuring this does not occur.

*Second*, Intervenors also seek to protect their own organizational interests. Many Intervenors actively engage in efforts to encourage either their members, or members of the military more generally, to vote (and register to vote). If the time period for early voting for members of the military registered in Ohio is reduced, Intervenors

> will have to conduct significant outreach and education programs, which will require the diversion of personnel and financial resources, to explain to [members of the military registered in Ohio] that in-person early voting is no longer allowed in the last three days prior to Election Day and to encourage [members of the military registered in Ohio] to vote in the time periods available.

*Cf.* Compl. ¶ 11.

*Finally*, on behalf of both themselves and their members, Intervenors have a strong interest in participating in this lawsuit because of the *stare decisis* impact to which an adverse ruling in this case could lead. The Sixth Circuit has held that, because the "potential stare decisis effects" of a case "can be a sufficient basis for finding an impairment of interest," an organization may intervene in litigation to attempt to prevent "the precedential effect of an adverse ruling." *Miller*, 103 F.3d at 1247; *see, e.g.*, *Esseltine v. Maxx*, No. 08-14542, 2007 U.S. Dist. LEXIS 58276, at *3 (E.D. Mich. July 9, 2009) ("Even the precedential effect of an adverse decision on future possible litigation will suffice" as an interest sufficient for allowing intervention.). Intervenors have a compelling interest in intervening in this lawsuit to defeat the Obama campaign's and Democratic National Committee's attempt to establish the precedents that: (i) laws giving special flexibility and consideration to military voters each must individually be subjected to a constitutional balancing test, and (ii) it is arbitrary and unconstitutional to give members of the military additional time to vote in person. Any such rulings—especially

depending on their breadth and rationale—could have far-reaching impacts, potentially calling into question certain aspects of both UOCAVA and the MOVE Act, which together are the bedrock upon which military voters depend.

Thus, each of these reasons is an independently sufficient basis for concluding that Intervenors have a substantial legal interest in participating in this lawsuit.

### C. Intervenors' Ability to Protect Their Interests Will Be Impaired Without Intervention

This Court also should permit Intervenors to participate in this lawsuit, because their ability to protect the interests discussed above will be impaired if intervention is denied. "[A] would-be intervenor must show only that impairment of its substantial legal interest is **possible** if intervention is denied. This burden is **minimal**." *Miller*, 103 F.3d at 1247, *citing Purnell*, 925 F.2d at 948; *see also Northeast Ohio Coal. for the Homeless v. Blackwell*, 467 F.3d 999, 1007 (6th Cir. 2006) ("The Supreme Court has emphasized that the requirement of impairment of a legally protected interest is a minimal one:"). Given the range of possible legislative or judicial remedies that reasonably might follow if this Court concludes that Ohio's early voting statute violates the Equal Protection Clause, *see Levin*, 130 S. Ct. at 2333; *Heckler*, 465 U.S. at 738-39, an "adverse determination in this case has the potential to hinder [Intervenors'] ability to protect their interest" in protecting the rights of military voters registered in Ohio to vote early through Election Day. *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 787 (6th Cir. 2007). Moreover, an adverse ruling in this case, by definition, would impair Intervenors' interest in avoiding adverse precedents that would limit the ability of states to afford extra opportunities, flexibility, or consideration to military voters.

### D. Intervenors' Interests Are Not Already Adequately Represented In This Case

Finally, this Court should allow Intervenors to participate in this matter because their interests are not already adequately represented by Defendants. Intervenors are required to make only a "minimal" showing of this requirement, as well. *Blackwell*, 467 F.3d at 1007; *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) ("[T]he burden of making that showing should be treated as minimal."). "[I]t is sufficient to prove that representation *may* be inadequate. A would-be intervenor is not required to show that the current representation will in fact be inadequate." *Blackwell*, 467 F.3d at 1008 (emphasis added); *see also Miller*, 103 F.3d at 1247-48. This requirement "is satisfied if the intervenor can show that there is substantial doubt about whether his interests are being adequately represented by an existing party to the case." *Bd. of Trs. of the Ohio Laborers' Fringe Benefit Progs. v. Ford Dev. Corp.*, No. 2:10-CV-0140, 2010 U.S. Dist. LEXIS 86492, at *9 (S.D. Ohio Aug. 20, 2010).

The Sixth Circuit repeatedly has held that a putative intervenor is not required to make "'a stronger showing of inadequacy'" just because it seeks to intervene on the same side as government officials or agencies. *Stupak-Thrall v. Glickman*, 226 F.3d 467, 479 (6th Cir. 2000), *quoting Grutter v. Bollinger*, 188 F.3d 394, 397-98 (6th Cir. 1999). Particularly in the context of election-related litigation, the Secretary of State—and, by extension, the Attorney General— "act[] in the capacity of a government agency" and cannot be deemed to represent the personal interests of particular groups of voters or organizations. *Blankenship v. Blackwell*, 341 F. Supp. 2d 911, 918 (S.D. Ohio 2004); *see, e.g.*, *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1255-56 (10th Cir. 2001) ("[T]he government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation.").

16

Here, Defendant Husted's "primary interest is in ensuring the smooth administration of the election." *Blackwell*, 467 F.3d at 1008. Even assuming that both defendants also have an interest in defending the constitutionality of Ohio law, they do not adequately represent Intervenors' specific interest in minimizing the level of constitutional scrutiny to which this Court subjects laws that provide special consideration, flexibility, or accommodations for military voters. Indeed, because Defendants broadly represent the general public as a whole, they cannot be expected to vigorously argue that this Court should afford special constitutional consideration to the rights of one group of voters. *See Clark v. Putnam Cnty.*, 168 F.3d 458, 461 (holding the fact that the county commissioner defendants "represent the interests of all Putnam County citizens . . . . indicates that [they] represent interests adverse to the proposed interveners"); *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 1001 (8th Cir. 1993) ("Because the counties and the landowners seek to protect local and individual interest not shared by the general citizenry of Minnesota, no presumption of adequate representation arises.").

Furthermore, in the event this Court concludes that Ohio's current statutory scheme is unconstitutional, Defendants reasonably can be expected to seek to minimize the resulting expense to the State, disruption to the electoral process, and additional burden on election workers, *see Blackwell*, 467 F.3d at 1008, such as by asking this Court to reduce or eliminate the additional days of early voting for military voters. Plaintiffs, in turn, intend to seek an expansion of the early voting period through Election Day for all voters, which may impose substantial financial and logistical burdens on the State. Compl. p. 19-20. Neither party shares or represents Intervenors' exclusive focus on the rights, interests, and convenience of military voters.

Additionally, in the event this Court holds that Ohio's early voting deadlines are unconstitutionally discriminatory, Intervenors likely would argue that this Court should invalidate the later deadline insofar as it applies to overseas civilians, while retaining it for military voters, who are subjected to extensive legal restrictions on their mobility. Alternatively, Intervenors likely would contend that this Court should limit the extended deadline to military (and possibly overseas) voters who fall within the federal definitions of those terms set forth in UOCAVA, *see* 42 U.S.C. § 1973ff-6(1), (5). Thus, Intervenors will present arguments that the existing parties are unlikely to make. *See Grutter*, 188 F.3d at 400 (holding that, to establish inadequacy of representation, "it may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments") (quotation marks omitted); *accord Miller*, 103 F.3d at 1247.

For these reasons, the Intervenor Military Groups satisfy all of the requirements for intervention as of right.

## II.  ALTERNATIVELY, THIS COURT SHOULD ALLOW PERMISSIVE INTERVENTION

If this Court concludes that the Intervenor Military Groups do not qualify for intervention as of right, it should instead exercise its broad discretion to allow permissive intervention pursuant to Fed. R. Civ. P. 24(b). Rule 24(b) provides, "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). It further specifies, "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id*. R. 24(b)(1)(3).

"A motion for permissive intervention under Rule 24(b) is directed to the sound discretion of the district judge." *Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 668 (6th Cir. 1985). "[P]ermissive intervention under Rule 24(b) is to be liberally granted." *Morocco v. Nat'l Union Fire Ins. Co.*, No. 2:03-CV-523, 2003 U.S. Dist. LEXIS 17918, at *9 (S.D. Ohio Oct. 9, 2003); *accord Wellington Res. Group, LLC v. Beck Energy Corp.*, No. 2:12-CV-00104, 2012 U.S. Dist. LEXIS 101999, at *6-7 (S.D. Ohio July 23, 2012).

This Court should exercise its broad discretion in this case to allow permissive intervention. As discussed earlier, the motion to intervene is timely. *See supra* Section I.A. Furthermore, the claims and defenses that the Intervenor Military Groups wish to raise share "common question[s] of law [and] fact" with "the main action." Fed. R. Civ. P. 24(b)(1)(B). Specifically, they wish to demonstrate that, as a threshold matter, it would be inappropriate for this Court to individually subject laws that establish special consideration, flexibility, and accommodations for military voters (and overseas citizens) to a constitutional balancing test. They further wish to demonstrate that it is neither arbitrary nor unconstitutional for the State of Ohio to allow military voters and overseas citizens extra time to participate in early voting. Finally, to the extent a constitutional violation does exist, it should be remedied in a way that does not limit the existing rights that Ohio law provides for military voters and overseas citizens.

None of the existing parties will be prejudiced by intervention. Indeed, because Intervenors wish to pursue "primarily . . . issues of law," permissive intervention is especially appropriate. *Berk v. Moore*, No. 2:10-CV-1082, 2011 U.S. Dist. LEXIS 53981, at *8-9 (S.D. Ohio May 9, 2011). Given the totality of the circumstances and the absence of prejudice, this Court should grant permissive intervention. *G.D. v. Riley*, No. 2:05-CV-980, 2009 U.S. Dist. LEXIS 106841, at *11 (S.D. Ohio Nov. 2, 2009).

**CONCLUSION**

For these reasons, Intervenor Military Groups respectfully request that this Court permit

them to intervene in this case.

Dated:   August 1, 2012                         Respectfully submitted,


/s/Kevin T. Shook
 Kevin T. Shook (0073718) (Trial Attorney)
Jill Meyer (0066326)
FROST BROWN TODD LLC
10 West Broad Street, Suite 2300
Columbus, Ohio  43215
Telephone:  (614) 559-7214
Facsimile:   (614) 464-1737
Email:  kshook@fbtlaw.com
         jmeyer@fbtlaw.com
*Attorneys for Putative Intervening Defendant*



Thomas E. Wheeler, II, #13800-49
FROST BROWN TODD LLC
201 North Illinois Street, Suite 1900
P.O. Box 44961
Indianapolis, IN  46244-0961
317-237-3800
Fax: 317-237-3900
twheeler@fbtlaw.com

*Counsel for Putative Intervening Defendants*
*(Motion for Admission Pro Hac Vice forthcoming)*

**CERTIFICATE OF SERVICE**

  I hereby certify that on August 1, 2012, a copy of the foregoing was filed electronically in accordance with the Court's Electronic Filing Guidelines.  Notice of this filing will be sent to the parties by operation of the court's electronic filing system. Parties may access this filing through the court's system.

          */s/ Kevin T. Shook*_____

          Kevin T. Shook (0073718)

COLLibrary 0000000.0001541  345536v1