**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OBAMA FOR AMERICA, DEMOCRATIC NATIONAL COMMITTEE, and OHIO DEMOCRATIC PARTY, | ) ) ) ) ) | |
| | ) | Case No. 2:12-CV-00636 |
| *Plaintiffs*, | ) ) | |
| | ) | Judge Peter C. Economus |
| v. | ) ) | |
| | ) | Magistrate Judge Norah McCann King |
| JON HUSTED, in his official capacity as Ohio Secretary of State, and MIKE DEWINE, in his official capacity as Ohio Attorney General, | ) ) ) ) | |
| | ) | **INTERVENOR MILITARY GROUPS'** |
| | ) | **MOTION TO DISMISS FOR FAILURE** |
| *Defendants*, | ) ) |  **TO STATE A CLAIM** |
| | ) | |
| NATIONAL GUARD ASSOCIATION OF THE UNITED STATES; ASSOCIATION OF THE U.S. ARMY; ASSOCIATION OF THE U.S. NAVY; MARINE CORPS LEAGUE; MILITARY OFFICERS ASSOCIATION OF AMERICA; RESERVE OFFICERS ASSOCIATION; NATIONAL ASSOCIATION FOR UNIFORMED SERVICES; NON COMMISSIONED OFFICERS ASSOCIATION OF THE USA; ARMY RESERVE ASSOCIATION; FLEET RESERVE ASSOCIATION; SPECIAL FORCES ASSOCIATION; U.S. ARMY RANGER ASSOCIATION, INC.; AMVETS; NATIONAL DEFENSE COMMITTEE; MILITARY ORDER OF THE WORLD WARS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| *Defendant-Intervenors*. | ) | |

**INTERVENOR MILITARY GROUPS' MOTION
TO DISMISS FOR FAILURE TO STATE A CLAIM**

Intervenor-Defendants National Guard Association of the United States (NGAUS); Association of the U.S. Army (AUSA); Association of the U.S. Navy (AUSN); Marine Corps League; Military Officers Association of America (MOAA); Reserve Officers Association (ROA); National Association for Uniformed Services (NAUS); Non Commissioned Officers Association of the USA (NCO); Army Reserve Association; Fleet Reserve Association (FRA); Special Forces Association (SFA); U.S. Army Ranger Association, Inc.; and Military Order of the World Wars (MOWW); AMVETS; and National Defense Committee (NDC) (collectively,"**Intervenors**") hereby move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Complaint for failure to state a claim.  Plaintiffs argue that the U.S. Constitution's Equal Protection Clause, U.S. Const., amend. XIV, prohibits states from offering extra time to military (and overseas) voters to cast in-person absent ballots.   To the contrary, it is not only constitutionally permissible, but affirmatively laudable for states to offer special flexibility, consideration and accommodations to military voters to facilitate their voting, whether in-person or absentee.  Thus, this Court should dismiss this suit.[1]

---

[1]  For the convenience of the Court, Defendant-Intervenors note that most of the discussion in this brief parallels the argument they have presented in their concomitantly filed Memorandum in Opposition to Plaintiffs' Motion for a Preliminary Injunction, as the same legal analysis applies in both contexts.

Dated:  August 1, 2012                    Respectfully submitted,


                                          */s/Kevin T. Shook*
                                          Kevin T. Shook (0073718) (Trial Attorney)
                                          Jill Meyer (0066326)
                                          FROST BROWN TODD LLC
                                          10 West Broad Street, Suite 2300
                                          Columbus, Ohio  43215
                                          Telephone:  (614) 559-7214
                                          Facsimile:   (614) 464-1737
                                          Email:  kshook@fbtlaw.com
                                                  jmeyer@fbtlaw.com
                                          *Attorneys for Intervening Defendants*



                                          Thomas E. Wheeler, II, #13800-49
                                          FROST BROWN TODD LLC
                                          201 North Illinois Street, Suite 1900
                                          P.O. Box 44961
                                          Indianapolis, IN  46244-0961
                                          317-237-3800
                                          Fax: 317-237-3900
                                          twheeler@fbtlaw.com

                                          *Counsel for Intervening Defendants*
                                          *(Motion for Admission Pro Hac Vice forthcoming)*

2

<u>**MEMORANDUM IN SUPPORT**</u>

<u>**OHIO'S IN-PERSON ABSENT VOTING LAW**</u>

The State of Ohio has given its voters the choice to either cast their votes on Election Day, or to vote early (*i.e.*, before Election Day) by using "absent voter ballots."  A qualified elector may request and return an absent voter ballot either by mail, or in person at specified locations, starting 35 days before Election Day.  Ohio Rev. Stat. § 3509.01(B).  The general deadline for requesting an absent voter ballot in person is 6:00 P.M. on the Friday before Election Day (which, for this election cycle, is November 2, 2012).  *Id*. § 3509.03.

The Ohio Election Code contains numerous provisions that offer special flexibility and accommodations for "uniformed services voters" and "overseas voters."  The term "uniformed services voter" (hereafter, "military voter") refers to:

- members of the Active or Reserve Component of the Army, Navy, Air Force, Marine Corps, or Coast Guard; the merchant marine; or the commissioned corps of the U.S. Public Health Service or National Oceanic and Atmospheric Administration ("NOAA"), *id*. § 3511.01(C)(1)-(2), (D)(1);

- members of the National Guard or organized militia who are "on active status," *id*. § 3511.01(C)(3), (D)(2); and

- spouses or dependents of either of the foregoing, *id*. § 3511.01(A), (D)(3).

The term "overseas voter" refers to:

- a person outside the United States who: before leaving the country, was last eligible to vote in Ohio; qualifies as an Ohio resident; and satisfies the requirements to vote in Ohio;

- a person outside the United States who: before leaving the country, would have been eligible to vote except for the fact that he had not yet turned 18 years old; qualifies as an Ohio resident; and satisfies the requirements to vote in Ohio; and

- a person who was born outside of the United States, qualifies as an Ohio resident, and satisfies the requirements to vote in Ohio.[2]

*Id*. § 3511.01(B)(1)-(3).

Ohio law contains two separate provisions which purport to establish deadlines by which military and overseas voters may request absent voter ballots in person (different rules apply to requests from such voters for absent ballots submitted by mail). Section 3511.02(C) echoes the statutory deadline for domestic civilian voters, requiring military and overseas voters to request absent voter ballots in person by 6:00 P.M. on the Friday before Election Day. *Id*. § 3511.02(C). Section 3511.10, in contrast, provides that a military or overseas voter may request an absent voter ballot in person up until "the close of the polls" on Election Day. *Id*. § 3511.10.

Ohio law provides that, when two statutes or statutory amendments are irreconcilable, "the latest in date" prevails. Ohio Rev. Code § 1.52. The current version of § 3511.02, which establishes the Friday before Election Day as the deadline for military and overseas voters, was enacted on July 27, 2011, as part of HB 224. *See* Motion for Preliminary Injunction, Dock. #2, at 4-5 (July 17, 2017) (hereafter, "PI Mot."). The current version of § 3511.10, which allows military and overseas voters to vote up through and including Election Day, was enacted afterwards, on May 15, 2012, through SB 295. *Id*. at 6. Thus, because § 3511.10 was enacted later in time, it is controlling under Ohio's rules of statutory construction, and military and overseas voters are permitted to cast absent voter ballots in person through Election Day.

---

[2]    A person born outside of the United States may qualify as an "overseas voter" under Ohio under this test only if Ohio was the last place within the United States in which his parent or guardian had been eligible to vote, and the person "had not previously registered to vote in any other state." Ohio Rev. Code § 3511.01(B)(2).

Defendant Husted has issued an advisory to county boards of election that is consistent with this interpretation, stating, "In-person absentee voting ends at 6 p.m. the Friday before election day for non-uniformed military and overseas voters.  R.C. 3509.03. . . .  Uniformed and overseas voters may vote in-person absentee until the close of the polls on the date of the general or primary election."  Advisory from Secretary of State John Husted (Oct. 14, 2011), Dock. #3-8, at 2 (July 17, 2012).  Although the Advisory was issued prior to the enactment of SB 295, the most recent amendment to Ohio's in-person absent voting laws, it is consistent with that law, and Secretary Husted has allowed the Advisory to remain in effect.

As Plaintiffs point out, the state legislature has been made aware of the fact that, as a result of both the canons of statutory construction and Defendant Husted's Advisory, military and overseas voters have three more days to cast absent voting ballots in person than domestic civilian voters.  The legislature apparently approves of that situation, however, and has declined to change either group's deadline.  *See* PI Mot. at 6-7 ("Concerns about creating two classes of voters with different access to the polls were raised several times through legislative testimony. . . .  The General Assembly chose not to address these issues."); *id*. at 7 ("[I]t was clear that there would be conflicting deadlines for in-person early voting."); *id*. at 8 (noting that "legislative efforts" to "restore early voting for [domestic civilian] voters in the three days prior to the election were all defeated").

## ARGUMENT

Ohio's decision to extend the deadline for in-person absent voting by military and overseas voters, but not the rest of the general civilian population, is constitutional under the Equal Protection Clause.  Especially as to federal elections, the State has broad constitutional discretion to determine the times at which people may vote.  *See* U.S. Const., art. I, § 4, cl. 1

("The times, places and manner of holding elections for Senators and Representatives, shall be prescribed in each state by the legislature thereof."); *see also Voting Integrity Proj., Inc. v. Bomer*, 199 F.3d 773, 775 (5th Cir. 2000) ("[A] state's discretion and flexibility in establishing the time, place and manner of electing its federal representatives has only one limitation: the state system cannot directly conflict with federal election laws on the subject.").

Any distinctions a State makes among different groups of voters in establishing the "times" for voting are subject to strict scrutiny only if they substantially burden the fundamental right to vote or are based on suspect classifications. *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 297 (6th Cir. 1993); *Zielasko v. Ohio*, 873 F.2d 957, 959 (6th Cir. 1989). Ohio's early voting laws do neither, and so are subject only to rational-basis scrutiny. *See infra* Sections A-B. Because the Ohio legislature reasonably could have concluded that military and overseas voters require special accommodation and flexibility in voting, the State's decision to afford them an extra three days was reasonable, not arbitrary. *See infra* Section C. This Court therefore should dismiss the Complaint.

### A. Ohio's In-Person Absent Voting Laws Do Not <u>Substantially Burden a Fundamental Right</u>

Plaintiffs' repeated contention that Ohio's early voting scheme places a "substantial burden" on voters' fundamental right to vote is flatly inconsistent with well-established precedent. Ohio's so-called "early voting" law is, in fact, merely an extension of its laws concerning absentee ballots. *See, e.g.*, Ohio Rev. Code §§ 3509.03, 3511.02(C), 3511.10. Indeed, the statutes repeatedly refer to the votes at issue as "absent voter's ballots." *Id.*

The fundamental constitutional right to vote does not include the right to either cast absentee ballots or vote early. *See McDonald v. Board of Election Commissioners*, 394 U.S. 802, 807 (1969) (distinguishing between "the right to vote," which is constitutionally protected, and the "claimed right to receive absentee ballots"); *Griffin v. Roupas*, 385 F.3d 1128, 1130 (7th Cir. 2004) (declining to recognize "a blanket right of registered voters to vote by absentee ballot"). "That the State accommodates some voters by permitting (not requiring) the casting of absentee or provisional ballots, is an indulgence—not a constitutional imperative that falls short of what is required." *Crawford v. Marion Cnty. Elec. Bd.*, 553 U.S. 181, 209 (2008) (Scalia, J., concurring); *see also O'Brien v. Skinner*, 414 U.S. 524, 536 (1974) (Blackmun, J., dissenting) ("The State, after all, as a matter of constitutional requirement, need not have provided for any absentee registration or absentee voting.").

Therefore, statutes that regulate or limit a voter's privilege to vote by absentee ballots, whether in person or by mail, neither burden the constitutional right to vote nor are subject to any form of heightened scrutiny (unless they involve a suspect classification, *see infra* Subsection I.A.2). Instead, a state is required only to avoid "arbitrary discrimination" in "permitting

7

absentee voting by some classes of voters and denying the privilege to other classes of otherwise qualified voters." *Am. Party of Texas v. White*, 415 U.S. 767, 795 (1974).

Courts repeatedly have applied rational-basis scrutiny to laws that made absentee or early voting more widely or easily available to some groups of voters than others. In *McDonald*, 394 U.S. 802, the plaintiffs brought an Equal Protection challenge to a state law that prohibited pretrial detainees from casting absentee ballots. The Supreme Court held, "It is . . . not the right to vote that is at stake here but a claimed right to receive absentee ballots." *Id*. at 807. Restrictions on availability of absentee ballots "do not themselves deny . . . the exercise of the franchise." *Id*. The Court went on to subject the legislative classification to rational-basis review, holding:

> The distinctions drawn by a challenged statute must bear some rational relationship to a legitimate state end and will be set aside as violative of the Equal Protection Clause only if based on reasons totally unrelated to the pursuit of that goal. Legislatures are presumed to have acted constitutionally even if source materials normally resorted to for ascertaining their grounds for action are otherwise silent, and their statutory classifications will be set aside only if no grounds can be conceived to justify them.

*Id*. at 808; *see also Clement v. Fashing*, 457 U.S. 957, 966 (1982) (noting that the *McDonald* Court did not use "heightened" scrutiny in its Equal Protection analysis of the absentee-voting restrictions). *Cf. O'Brien v. Skinner*, 414 U.S. 524, 530 (1974) (applying rational-basis review and concluding that it was "wholly arbitrary" for the State to allow pretrial detainees and people incarcerated for misdemeanors to cast absentee ballots only if they were incarcerated outside of their home counties, and not if they were being held within their home counties).

Plaintiffs' claim in the instant case is comparable to the Equal Protection argument that the Seventh Circuit rejected under the rational basis standard in *Griffin v. Roupas*, 385 F.3d 1128 (7th Cir. 2004). In *Griffin*, the court considered an Illinois law that allowed only certain classes

8

of people to vote absentee. The plaintiffs, a group of working mothers who claimed it was "a hardship for them to vote in person on election day," argued that the law violated the Equal Protection Clause, and asked the Court to permit absentee voting by anyone "who find[s] it hard for whatever reason to get to the polling place on election day." *Id*. at 1129-30. The court rejected their claim without applying any heightened scrutiny, holding that it was "quintessentially a legislative judgment" as to which groups should be permitted to cast absentee ballots. *Id*. at 1131.

Likewise, in *Gustafson v. Illinois State Board of Elections*¸ No. 06-C-1159, 2007 U.S. Dist. LEXIS 75209, at *15-16 (N.D. Ill. Sept. 30, 2007), the plaintiffs brought an Equal Protection challenge to the State Board of Elections' implantation of Illinois' new early voting statute. They alleged that "wide variations of early voting availability existed" among Illinois' counties, "with some voters having much greater access to the polls than others," creating "an obvious disparity of access to early voting." *Id*. at *16. In determining the level of scrutiny to plaintiffs' claim, the court recognized that "[v]oluntary expansion of voting rights, such as absentee voting, may not warrant strict scrutiny." *Id*. at *29.

The court went on to explain:

> Notably, the law in this instance does not remove the right to vote from any individual, and indeed expands the right for all Illinois voters. Plaintiffs argue that it expands the right for some more than others; however, this is an effect rather than a purpose of the law, and in any event goes toward questions of ease of voting rather than outright denial of any fundamental right. We find that Defendants' actions or inaction in this matter are more similar to the minimal burden that "election laws will invariably impose . . . upon individual voters."

*Id*. at *30, *quoting Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992). The court "appl[ied] the equivalent of a rational basis test," *id*. at *29, and rejected Plaintiffs' Equal Protection claim, *id*. at *33.

9

Thus, Ohio's deadlines for in-person absent voting do not substantially burden a fundamental right, and are subject only to rational basis scrutiny.

**B.    Ohio's In-Person Absent Voting Laws Do
 Not Discriminate Against Suspect Classes.**

The other reason that heightened scrutiny does not apply to the extended deadline for in-person early voting by military and overseas voters is that neither of those groups is a suspect classifications.  The suspect classifications that trigger "heightened scrutiny" are "race, alienage, national origin, gender, [and] illegitimacy."  *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 503 (6th Cir. 2007).    Legislative classifications based on membership in the military are not suspect and therefore do not require heightened scrutiny.  *See, e.g.*, *Rumsey v. N.Y. State Dep't of Corr. Servs.*, 19 F.3d 83, 92 (2d Cir. 1994); *Velasquez v. Frapwell*, 160 F.3d 389, 391 (7th Cir. 1998), *vacated on other grounds*, 165 F.3d 593 (7th Cir. 1999).  The same is true concerning residence overseas.  *See, e.g.*, *Miller v. United States*, 73 F.3d 878, 881 (9th Cir. 1995); *De La Rosa v. United States*, 32 F.3d 8, 10 (1st Cir. 1994).  Thus, Ohio's deadlines for in-person absent voting remain subject only to rational-basis scrutiny.

**C.    Ohio's Decision to Extend the Deadline for Military
 and Overseas Voters to Cast In-Person Absent Ballots
 was Rationally Related to Legitimate Considerations**

The State of Ohio's decision to provide extra time to military and absent voters to cast in-person absent ballots was reasonable under the Equal Protection Clause.  *See McDonald*, 394 U.S. at 807-08; *Griffin*, 385 F.3d at 1130; *Gustafson*, 2007 U.S. Dist. LEXIS 75209, at *15-16. Plaintiffs repeatedly reiterate the fact that the Ohio legislature did not expressly articulate any rationale for establishing two separate deadlines.  PI Mot. at 1, 10, 12.  It is well-established, however, that "the Equal Protection Clause does not demand for purposes of rational-basis

review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification." *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992). As noted earlier, "statutory classifications will be set aside only if no grounds can be conceived to justify them." *McDonald*, 394 U.S. at 809; *accord Schlib v. Kuebel*, 404 U.S. 357, 364 (1971); *see also Reed v. Reed*, 404 U.S. 71, 75 (1971) ("[T]he Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways.").

In weighing the constitutionality of a statutory classification under the rational basis test, the court must be "tolerant of the use of broad generalizations about different classes of individuals." *Tuan Anh Nguyen v. INS*, 533 U.S. 53, 76 (2001).

> [A] State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some reasonable basis, it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality. The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.

*Dallas v. Stanglin*, 490 U.S. 19, 26-27 (1989) (quotation marks and citations omitted); *accord Heller v. Doe*, 509 U.S. 312, 320-21 (1993); *Bowen v. Gilliard*, 483 U.S. 587, 600-01 (1987). The Sixth Circuit specifically has recognized, "[A] law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *E. Brooks Books, Inc. v. Shelby Cnty.*, 588 F.3d 360, 364 (6th Cir. 2009).

The State of Ohio's decision to extend special consideration, accommodations, and flexibility to military voters was not only eminently reasonable, but positively commendable. "The military constitutes a specialized community governed by a separate discipline from that of the civilian." *Orloff v. Willoughby*, 345 U.S. 83, 94 (1953). The "differences between the

11

military and civilian communities result from the fact that 'it is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise.'"  *Parker v. Levy*, 417 U.S. 733, 743 (1974), *quoting United States ex rel. Toth v. Quarles*, 350 U.S. 11, 17 (1955); *see also Brown v. Glines*, 444 U.S. 348, 354 (1980) ("Military personnel must be ready to perform their duty whenever the occasion arises.").

Due to such "unique military exigencies," the military "must insist upon a respect for duty and a discipline without counterpart in civilian life."  *Schlesinger v. Councilman*, 420 U.S. 738, 757 (1975).  It "regulates aspects of the conduct of [its] members . . . which in the civilian sphere are left unregulated."  *Middendorf v. Henry*, 425 U.S. 25, 38 (1976).  In the words of one court:

> It is common knowledge that military life differs significantly from civilian life. Soldiers, Sailors and Marines are not free to come and go as they please.  They do not make up their own work hours.  They do not choose the locations of their jobs.  They do not choose what clothes they will wear to work, or even how they will wear those clothes. . . .  Military life—as a matter of functionality, necessity and national security—is one of regimented, controlled, ordered existence.

*Dibble v. Fenimore*, 488 F. Supp. 2d 149, 160 (N.D.N.Y. 2006).  As a result, "[h]ow and where [members of the military] conduct their lives is dictated by the government.  The vote is their last vestige of expression and should be provided no matter what their location."  *Bush v. Hillsborough Cnty. Canvassing Bd.*, 123 F. Supp. 2d 1305, 1307 (N.D. Fla. 2000).

Consequently, the State of Ohio reasonably could have concluded that additional time for in-person absent voting was necessary as an additional means of helping to ameliorate the obstacles that military service can present to voting.  For Active Duty members who may not be "free to come and go as they please," *Dibble*, 488 F. Supp. 2d at 160—especially those stationed in Ohio—the extra weekend of voting increased the likelihood that they will be able to travel to a

polling place to vote.  Likewise, for all members of the military registered and living in Ohio—including, in many cases, their families and Reservists—the omnipresent possibility of training accidents, military emergencies, last-minute orders, temporary duty in a different location, or innumerable other contingencies to which one is subject as a result of military service can jeopardize their voting plans, and render the weekend before Election Day a critical opportunity to exercise their franchise.

Furthermore, in the 2008 election cycle, only 54% of active duty military members voted, Dep't of Def., Federal Voting Assistance Program, *Eighteenth Report: 2008 Post Election Survey Report*, at v (March 2011),[3] while only 29% did so during the 2010 cycle, Dep't of Def., Federal Voting Assistance Program, *2010 Post Election Survey Report to Congress*, at iv (Sept. 2011).[4]  The extra three-day period for in-person absent voting reasonably can be seen as a part of the State's effort to further encourage and facilitate voting by members of the military, whose daily sacrifices allow the right to vote to remain alive in the first place.  Even if Plaintiffs believe that the State's effort is overinclusive in some respects (*i.e.*, by including military families or Reservists who live in Ohio), that does not render it unconstitutional.

Finally, efforts to facilitate and maximize military voting should be welcomed, not viewed with constitutional suspicion.  *See Bush*, 123 F. Supp. 2d at 1317 n.27 (recognizing that the men and women of the U.S. Armed Forces "fight for the very principle that our democratic society is based [upon]—the fundamental right to vote").  For these reasons, it is hardly "arbitrary" for the State of Ohio to facilitate voting by members of the military by giving them an extra weekend to cast in-person absent ballots.

---

[3]  *Available at* http://www.fvap.gov/resources/media/18threport.pdf.

[4]  *Available at* http://www.fvap.gov/resources/media/2010report.pdf.

The State likewise had a rational basis—albeit a far less compelling one—for allowing citizens living overseas to cast in-person absent ballots on the weekend before Election Day. The only circumstance in which that extra time would have any practical effect is if the overseas voter happened to be in Ohio that weekend (especially if he or she was departing on, or before, Election Day). The State reasonably could have concluded that, under those circumstances, allowing the person to vote in person was a reasonable and logistically feasible means of facilitating his or her vote—rather than sending an absentee ballot to the person's home country or the Ohio hotel or residence at which they are staying (in the hope that it would arrive while the voter was still there).

Alternatively, given the inherent risks and delays with international mail, *see Hilska v. Jones*, 297 F. Supp. 2d 82, 85 n.6 (D.D.C. 2003), the State could have decided to maximize in-person voting opportunities for overseas voters, for those fortuitous enough to be in a position to take advantage of them. Finally, the State could have recognized that the number of overseas voters who would be in a position to vote in person the weekend before Election Day was so *de minimus* that allowing them to do so would not burden election officials or interfere with Election Day preparations. Allowing the general public to vote throughout that weekend, in contrast, would be a substantial burden on election personnel, and risk undermining their preparations for Election Day. *See* Compl. ¶¶ 5, 22 (noting that "approximately 93,000 Ohioans voted in the three days prior to the 2008 presidential election").

Thus, neither military nor overseas voters share "similar circumstances" with the civilian voting public in Ohio, and the State's decision to grant them three extra days of in-person early voting therefore was not arbitrary. *Am. Party of Tex. v. White*, 415 U.S. 767, 795 (1974). As the Supreme Court held in *McDonald*, 394 U.S. at 809, although the State certainly could "make

14

voting easier for all concerned by extending [in-person] absentee voting privileges" on the weekend before Election Day to all voters, its "failure to do so" does not violate the Equal Protection Clause.

## **CONCLUSION**

For these reasons, this Court should dismiss the Complaint.

Dated:   August 1, 2012                         Respectfully submitted,

*/s/Kevin T. Shook*_____
 Kevin T. Shook (0073718) (Trial Attorney)
Jill Meyer (0066326)
FROST BROWN TODD LLC
10 West Broad Street, Suite 2300
Columbus, Ohio  43215
Telephone:  (614) 559-7214
Facsimile:   (614) 464-1737
Email:  kshook@fbtlaw.com
             jmeyer@fbtlaw.com
*Attorneys for Intervening Defendants*


Thomas E. Wheeler, II, #13800-49
FROST BROWN TODD LLC
201 North Illinois Street, Suite 1900
P.O. Box 44961
Indianapolis, IN  46244-0961
317-237-3800
Fax: 317-237-3900
twheeler@fbtlaw.com

*Counsel for Intervening Defendants*
*(Motion for Admission Pro Hac Vice forthcoming)*

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2012, a copy of the foregoing was filed electronically in accordance with the Court's Electronic Filing Guidelines.  Notice of this filing will be sent to the parties by operation of the court's electronic filing system. Parties may access this filing through the court's system.

*/s/ Kevin T. Shook*
Kevin T. Shook (0073718)

COLLibrary 0000000.0001541  345541v1