# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **OBAMA FOR AMERICA, et al.,** | **Case No. 2:12-CV-0636** |
| **Plaintiffs,** | **JUDGE PETER C. ECONOMUS** |
| **v.** | **OPINION AND ORDER** |
| **JON HUSTED, et al.,** | **ON PRELIMINARY INJUNCTION** |
| **Defendants.** | |

"A citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972). In Ohio, that right to participate equally has been abridged by Ohio Revised Code § 3509.03 and the Ohio Secretary of State's further interpretation of that statute with regard to in-person early voting. In 2005, Ohio expanded participation in absentee balloting and in-person early voting to include all registered Ohio voters. Now, "in-person early voting" has been redefined by the Ohio legislature to limit Plaintiffs' access to the polls. This Court must determine whether preliminary injunctive relief should be granted to Plaintiffs on their claim that Ohio's restriction of in-person early voting deprives them of their fundamental right to vote. Following Supreme Court precedent, this Court concludes that Plaintiffs have stated a constitutional claim that is likely to succeed on the merits. As a result—and as explained below—this Court grants Plaintiffs' motion for preliminary injunction.

## I.    PROCEDURAL BACKGROUND

Plaintiffs Obama for America, Democratic National Committee, and Ohio Democratic Party ("Plaintiffs") filed a complaint against Jon Husted, in his official capacity as Ohio

Secretary of State, and Mike DeWine, in his official capacity as Ohio Attorney General ("the State" or "Defendants").  (Doc. # 1.)  In their complaint, Plaintiffs allege that implementation of a 6 p.m. Friday deadline for in-person early voting codified in Ohio Revised Code ("ORC") § 3509.03 unconstitutionally infringes on the fundamental right to vote.[1]  In addition, Plaintiffs allege that conflicting and different deadlines for in-person early voting violate the Equal Protection clause of the United States Constitution.

The Ohio Revised Code, as interpreted by Defendant Secretary of State Husted, provides for two different deadlines for in-person early voting: one for "UOCAVA" voters—voters who fall within the stated definition under the Uniformed and Overseas Citizens Absentee Voter Act[2]—and another deadline for non-UOCAVA voters, *i.e.,* all other voters.  Plaintiffs filed a Motion for Preliminary Injunction, seeking to prohibit the State from enforcing the 6 p.m. Friday deadline and to restore in-person early voting to all Ohio voters through the Monday before Election Day. (Doc. # 2.)  Plaintiffs filed an Affidavit in Support of their motion, with exhibits. (Doc. # 3.)

---

[1] For the purposes of this Opinion, the Court uses "in-person early voting" to refer to the period of time when a registered Ohio voter may cast his or her ballot in person at a local elections board or other designated site.  In addition, the Court uses "Election Day" to refer to November 6, 2012; "Friday" to denote the Friday before Election Day; "the weekend" to refer to the Saturday and Sunday before Election Day; and "Monday" to refer to the Monday before Election Day.

[2] In 2009, Congress passed the Military and Overseas Voter Empowerment Act ("MOVE Act"), which amended the Uniformed and Overseas Citizens Absentee Voting Act of 1986 ("UOCAVA"), 42 U.S.C. § 1973ff, *et seq.* Pub.L. No. 111-84 §§ 577 to 582, 583(a), 584 to 587, 123 Stat. 2190 (2009).  UOCAVA, as amended by the MOVE Act, required the states to implement particular reforms prior to the November 2010 general elections to prevent the disenfranchisement of absent uniformed services and overseas voters.  Ohio's statutes with regard to UOCAVA voters can be found in Ohio Revised Code Chapter 3511.

Pursuant to a briefing schedule ordered by this Court, the State and Defendant/Intervenors[3] filed memoranda in opposition (docs. # 9 and 10).  Plaintiffs filed a reply in support of their motion.  (Doc. # 20.)  Two groups filed motions for leave to file amicus briefs, and those motions were granted and the amicus briefs were deemed filed *instanter*.  (Amicus brief of American Center for Law and Justice, doc. # 19; amicus brief of County of Cuyahoga, Ohio, doc. # 38.)

On August 15, 2012, this Court held a hearing on Plaintiffs' motion for preliminary injunction.  The parties filed numerous exhibits: Plaintiffs' Exhibits (docs. # 34, 34-1 – 34-42); Defendants' Exhibits, which include exhibits of both the State and Defendant/Intervenors (docs. # 35, 35-1 – 35-12).  In addition, after the hearing, the State Defendants filed a Notice of Secretary of State Directive 2012-35.  (Docs. # 40 and 40-1.)  In response to that notice, Plaintiffs filed a Supplemental Memorandum, with exhibits (docs. # 42, 42-1 – 42-5), to which the State Defendants filed a response (doc. # 44).  Thereafter, Plaintiffs filed a Notice of Further Developments, with exhibits.  (Doc. # 46, 46-1 – 46-2.)

## II.  LEGISLATIVE BACKGROUND

### A.  *In-Person Early Voting Rights*

Arguably as a response to the problems attendant to the 2004 general election,[4] the Ohio

---

[3] On August 1, 2012, Defendant/Intervenors Military Groups filed a Motion to Intervene.  (Doc. # 8.)  This Court granted the motion in an Order dated August 6, 2012.  (Doc. # 12.)

[4] *See, e.g., League of Women Voters v. Brunner*, 548 F.3d 463 (6th Cir. 2008) and descriptions therein.

General Assembly established no-fault absentee voting, eliminating the qualifications voters had been required to meet under the former law. (HB 234, 126th Leg. (Oh. 2005) (amending Ohio Rev. Code §§ 3509.02(A) and (C), 3509.03, and 3509.04(B)).) In doing so, the State expanded to all Ohio voters the right to vote absentee and the right to cast that vote in person at the voter's county's board of elections (or other designated site) through the day before Election Day.[5]

**B.** *Legislative Ambiguity*

On June 29, 2011, the Ohio General Assembly passed Amended Substitute House Bill Number 194 ("HB 194"). Governor John Kasich signed the bill on July 1, 2011. By passing HB 194, the Ohio General Assembly sought to eliminate the last three days of early in-person voting for *all* voters, but instead it created two deadlines: Friday at 6 p.m. *and* end of business Monday.[6] On July 13, 2011, the 129th Ohio General Assembly passed Amended Substitute

---

[5] *See* H.B. 194, 129th Leg. (Oh. 2011) ("HB 194") at § 3509.01 (setting no deadline prior to HB 194 amendments), § 3509.03 (setting a deadline of Monday), § 3511.02 (setting a deadline of Monday), and § 3511.10 (prior to HB 194 amendments, setting a deadline of Monday for *early* in-person voting.) The Ohio Revised Code provisions regarding early voting are not a model of legislative clarity. The provisions' language is disorganized and generally confusing, containing numerous deadlines that are not clearly identified.

[6] For non-UOCAVA voters, HB 194 amended § 3509.01 to provide that, "[f]or all voters who are applying to vote absent voter's ballots in person, ballots . . . shall continue to be available for use through six p.m. on the last Friday before the day of the election." (HB 194, Sec. 3509.01(B)(3).) However, HB 194 did not change the language in § 3509.03, which set the end time for in-person early voting at close of business the day before an election. (HB 194, Sec. 3509.03.) The deadline for in-person early voting was inconsistent: Friday at 6 p.m. *and* close of business on Monday. In addition, HB 194 amended § 3511.10 to make the deadline for in-person early voting deadline for UOCAVA voters consistent with the deadline for non-UOCAVA voters, changing the deadline from the close of the polls on Election Day to "during the time that absent voter's ballots may be cast in person." (HB 194, Sec. 3511.10.) However, HB 194 *did not* amend § 3511.02, which permitted in-person early voting by UOCAVA voters

House Bill Number 224 ("HB 224"). The bill was signed on July 27, 2011 but did not become effective until October 27, 2011. HB 224 amended both §§ 3509.03 and 3511.02 to end early voting for *all* Ohio voters at Friday at 6 p.m. Before HB 224 went into effect, on September 29, 2011, a referendum petition was filed, the immediate effect of which was to put on hold HB 194's amendments. (*See* McTigue Aff. Ex. 5.) With HB 194 on hold, HB 224 served to continue the legislative confusion with conflicting and unclear deadlines.[7]

Defendant Secretary of State addressed the issue of inconsistent in-person early voting deadlines in the Secretary of State Advisory 2011-07, dated October 14, 2011. (McTigue Aff., Exh. 8.) That advisory directed all Ohio elections boards to limit in-person early voting for non-UOCAVA voters to 6 p.m. the Friday before Election Day but to extend the deadline to UOCAVA voters through the Monday before Election Day.

On May 8, 2012, the 129th Ohio General Assembly passed Substitute Senate Bill Number 295 ("SB 295"). SB 295 was signed on May 15, 2012 and became effective on August 15, 2012. Although SB 295 repealed HB 194, it did not repeal the changes made by HB 224. It therefore enacted into law the post-referendum status of the in-person early voting deadlines. Specifically, non-UOCAVA voters may vote early in-person until 6 p.m. on Friday pursuant to

---

until the close of regular business hours on the day before the election. Again, this resulted in two deadlines for in-person early voting: Friday at 6 p.m. *and* close of business on Monday.

[7] Pursuant to ORC § 3509.03, the deadline for non-UOCAVA voters is 6 p.m. Friday. UOCAVA voters have two deadlines, 6 p.m. Friday and end of business on the Monday before Election Day, pursuant to ORC §§ 3511.02, as amended by HB 224, and 3511.10, as that section provided prior to HB 194, respectively.

§ 3509.03, while § 3509.01 contains no deadline.  Notwithstanding any attempts at consistency, UOCAVA voters are again left with two deadlines: Friday at 6 p.m., pursuant to § 3511.02, and the close of business on Monday, pursuant to § 3511.10.

On June 22, 2012, the Secretary of State issued Directive 2012-24. (Defs. Exh. 2.)  In this one, he stated as follows:

> In order to ensure uniformity across counties and reduce lines at polling places for the November 6, 2012 General Election, the Secretary of State's Office will mail absentee ballot applications, by non-forwardable mail, to 1) every registered voter in Ohio in "active" status [footnote omitted], and 2) every registered voter in Ohio who voted in the 2008 presidential election as reflected in the Statewide Voter Registration Database, regardless of voter status as described herein.

On Wednesday, August 15, 2012, Defendant Secretary of State issued another directive that sets uniform "regular business hours" for all Ohio elections boards, beginning October 2, 2012 through November 2, 2012.  (Directive 2012-35, filed by Defendants, doc. # 40-1.)  The directive eliminates weekend hours.  Henceforth, all Ohio elections boards will be open between Monday and Friday, from 8:00 am through 5:00 pm until the last two weeks prior to Election Day, when the hours extend to 7 p.m.[8]  Defendant Secretary of State stated, in the directive, as follows:

> [A]fter talking with election officials across the state, I have decided **to level the playing field** on voting days and hours during the absentee period in order to ensure that the Presidential Election in Ohio will be **uniform, accessible for all, fair, and secure.**

_____

[8] All Boards of Elections are closed on Monday, October 8, 2012 in observance of a state holiday.  The next day, Tuesday, October 9, 2012, Boards of Elections are to be open from 8 a.m. to 9 p.m.  (Directive, doc. # 40-1, page 2.)

(Doc. # 40-1, page 2, emphasis added.)

For non-UOCAVA voters, weekend in-person early voting no longer exists. To participate in in-person early voting, an Ohio voter must cast his or her vote during the traditional work week, during typical working hours—except for the last two weeks prior to Election Day, when elections boards are open until 7 p.m. weekdays, until Friday, November 2, 2012 at 6 p.m.

The lack of weekend voting hours affects UOCAVA voters, as well, as the Secretary forbids any county elections board to be open on the weekends between October 2 and November 2. According to Defendants, this Directive does not instruct elections boards to be open the weekend prior to Election Day, instead leaving UOCAVA voters' access to in-person early voting to the discretion of each county elections board. (Defs. Response, page 1.)

## III. THE PARTIES' ARGUMENTS

### A. *Plaintiffs*

The gravamen of Plaintiffs' complaint is that all Ohio voters should be able to vote during the three days prior to Election Day—as they have since 2005—and that the State's restriction of in-person early voting is an unconstitutional violation of the Equal Protection Clause of the United States Constitution. (*See* Complaint and Motion for Preliminary Injunction.) Plaintiffs seek a court order preventing the State from enforcing a Friday 6 p.m. deadline and restoring early in-person voting rights to all registered Ohio voters. (Complaint, ¶ 1.)

Plaintiffs assert that "tens of thousands of Ohio voters" will seek to exercise their right "to cast their votes in the three days prior to Election Day—a critical right that was granted to all

qualified Ohio voters in 2005, used by an estimated 93,000 Ohio voters in the 2008 presidential election, and inequitably taken away from most, but not all, Ohio voters without justification in the last year." (Motion for Prelim. Inj., page 1.)  In support, Plaintiffs submit four statistical studies.  One study asserts that 17.8% of 2010 Ohio early voters cast those votes in person at local boards of elections.  ("A Study of Early Voting in Ohio Elections," The Ray C. Bliss Institute of Applied Politics at the University of Akron, doc. # 34-31 at pages 1 – 2.)  The study also notes that "early voters were more likely than election-day voters to be women, older, and of lower income and education attainment." (*Id.* at page 1.)  "[E]arly voters appear to have favored Democratic candidates in 2010 and 2006, while election-day voters favored Republican candidates." (*Id.* at pages 1-2.)  From the 2006 and 2008 elections, early voting in Ohio increased from 639,416 voters to 1,717,256 voters, representing an increase to 20% of registered voters and 30.2% of the vote cast. (*Id.* at pages 2-3.)  In 2010, a survey of early voters indicated that at least 29% cast their vote in the seven days before Election Day. (*Id.* at page 5.) Significantly, the study indicated that early voters "tend to have lower income than election-day voters" with the difference "most noticeable among people with annual incomes of less than $35,000." (*Id.* at page 15.)  The study does point out that both early and election-day voting groups have approximately the same number of people in the highest income category. (*Id.*)

In another study, a voter advocacy group reviewed data from the 2008 General Election and, extrapolating information collected in seven Ohio counties, concluded that over 100,000 voters would vote in person during the last three days before Election Day. (Update, Northeast Ohio Voter Advocates, doc. # 34-32, page 2; *see also* "Effects of HB194 and SB148 on Absentee Voting. Part 1. Expected Crowding of In-Person Absentee Voting in 2012," Northeast

Ohio Voter Advocates, doc. # 34-33, page 2, concluding that "a short absentee voting period with uniform hours for all counties would cause non-uniform crowding and most likely, a non-uniform loss of vote in different counties.")

The Northeast Ohio Voter Advocates also produced a study based on data from the Cuyahoga County, Ohio Board of Elections and the 2010 census. ("Racial and ethnic proportions of early in-person voters in Cuyahoga County, General Election 2008, and implications for 2012," doc. # 34-35.) That study indicates that the new restrictions on in-person early voting disproportionately impacts African American voters in Cuyahoga County.

Finally, the Franklin County Board of Elections prepared a report "to identify when EIP [Early In-Person] voting was most utilized, to identify spatial patterns/trends of EIP voters, and to study the racial and ethnic make-up of EIP voters," based on a file of all 2008 in-person early voters in Franklin County and 2010 Census data. ("2008 Early In-Person Voting," doc. # 34-34.) The report concluded that in-person early voting accounted for 9% of all ballots cast in 2008, representing 51,785 voters. (*Id.* at page 3.) Other statistical data indicated that a disproportionately higher number of African Americans voted early and that 82% of all early in-person votes were cast "during either afterhours on weekdays, on weekends, or the Monday before the election[.]" (*Id.*) In addition, the study showed that 67% of weekday early in-person voting took place after 5 p.m. (*Id.*)

Defendants do not submit any countervailing statistical information, other than an article from "PSOnline" written by three authors from Reed College in Oregon. (Defs.' Exh. 11.) That article provides a general, national overview of early-voting election reforms, but that overview is based primarily on information obtained no later than 2005, and it does not offer any specific

statistics related to Ohio.

Prior to the legislative flurry and the Secretary of State's interpretation of same, Ohio voters had the right to vote during the 35 days leading up to Election Day, weekends inclusive. Now, except for voters serving in the military or located overseas, voters may cast their votes only during limited weekday working hours and, then, only until 6 p.m. on Friday.  Plaintiffs argue that the burden is substantial, disproportionately affects minority and working class voters, and is the result of arbitrary treatment by the State.

**B.**    *Defendants*

Defendants' counter-argument is that the burdens on Ohio boards of election call for restricted hours for in-person early voting, including the weekend prior to Election Day, with the exception of UOCAVA voters whose special treatment is both necessary and commendable.  In support, Defendants offer the declaration of the Deputy Assistant Secretary of State, Matthew Damschroder (Defs.' Exh. 8, doc. # 35-9) and the declarations of two career military officers, Colonel Duncan D. Aukland and Captain Robert H. Carey, Jr. (Defs.' Exhs. 7 and 9, respectively).   Defendants list the various duties imposed on elections boards and poll workers, from displaying a precinct map and collecting supplies to preparing the official list of registered voters which contain "notations of those voters who have already requested an absentee ballot by mail or in person in order to prevent an absentee voter from also casting a regular ballot on Election Day" pursuant to ORC § 3509.06(D).  (Mem. Contra, pages 17 – 18.)  Defendants assert that permitting all Ohio voters to vote in person the three days prior to Election Day will interfere with elections boards' collective ability to prepare.  (*Id.* at 18.)

The military officers describe the particular difficulties faced by military voters who may need access to voting the last three days prior to Election Day due to unexpected deployment. Defendants point out that without those last three days, a suddenly deployed serviceperson may not be able to vote at all:

> The Ohio General Assembly recognizes the nature of deployment, which can happen abruptly and unexpectedly.  For instance, members of the National Guard can be called up to active duty in order to respond to disasters, whether manmade or natural.  These call-ups can occur at a moment's time without any warning. . . .
>
> Ohio's laws, allowing UOCAVA voters the ability to cast an absentee ballot **after the time during which non-military and domestic voters may do so has closed**, rationally recognizes the unique circumstance that military voters may face.  The General Assembly has provided a statutory scheme that accommodates that possibility.

(Defs.' Mem. Contra, pages 13 – 14, emphasis added.)  However, although the State Defendants argue strenuously in favor of UOCAVA voting during those last three days, they do not reconcile that fervor with the reality that Defendant Secretary of State failed to preserve the right of UOCAVA voters to vote that weekend—or any weekend—as the result of his Directive 2012-35. That directive eliminates all weekend voting and, ultimately, leaves it to the discretion of county elections boards to make available in-person early voting to UOCAVA voters on the Saturday, Sunday, and Monday prior to Election Day.  (*See* Defs.' Response, doc. # 44, page 2.)

## IV.    PRELIMINARY INJUNCTION

Rule 65 of the Federal Rules of Civil Procedure authorizes the Court to grant preliminary injunctive relief.  A district court is to consider the following four factors when deciding to issue a preliminary injunction: (1) whether the movant has a strong likelihood of success on the merits;

(2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *See Hunter v. Hamilton County Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011); *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). "[T]he four considerations applicable to preliminary injunctions are factors to be balanced and not prerequisites that must be satisfied." *In re Eagle-Picher Industries, Inc.*, 963 F.2d 855, 859 (6th Cir. 1992) (citation omitted). "These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *Id.* at 859.

### A.  *Likelihood of Success on the Merits*

The right to vote is a fundamental right, "preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). The United States Supreme Court has reiterated time and again the particular importance of treating voters equally, from *Gray v. Sanders*, 372 U.S. 368 (1964)—"The idea that every voter is equal to every other voter in his State, when he casts his ballot in favor of one of several competing candidates, underlies many of our decisions"—to *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972)—"A citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction"—to *Bush v. Gore*:

> The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. **Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another.** It must be remembered that the right of suffrage can be denied by a

12

>  debasement or dilution of the weight of a citizen's vote just as
>  effectively as by wholly prohibiting the free exercise of the
>  franchise.

531 U.S. 98, 104-05 (2000) (internal citations and quotations omitted) (emphasis added).

Consistent with the admonition against devaluing or "debas[ing] the weight of a citizen's vote,"

the Sixth Circuit has applied the *Bush/Gore* analysis and Supreme Court precedent to elections

cases in recent years.  *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 477 (6th Cir.

2008) (noting that "[a]lthough *Bush* was necessarily limited to [its] present circumstances,

district courts have found its analysis applicable in challenges to voting systems.") (internal

citation and quotation marks omitted).  Similarly, in *Hunter v. Hamilton County Bd. of Elections*,

the Sixth Circuit was guided in their analysis "by the important requirement that state actions in

election processes must not result in arbitrary and disparate treatment of votes."  635 F.3d 219,

234 (6th Cir. 2011) (quoting *Bush/Gore*, 531 U.S. at 105) (internal citation and quotation marks

omitted).  Of course, *Hunter* involved the actual counting of votes—as did *Bush v. Gore*—but

*League of Women* concerned a plethora of problems Ohio voters faced when attempting to cast

their votes.  All of these cases—and their precedents—rely on the principle that voters cannot be

restricted or treated in different ways without substantial justification from the state.

     Courts employ the *Anderson* "balancing approach" when they are confronted with a

constitutional challenge to a state's restriction on voting.  *Anderson v. Celebrezze*, 460 U.S. 780

(1983); *Burdick v. Takushi*, 504 U.S. 428 (1992).[9]   More recently, the Supreme Court highlighted the applicability of the *Anderson* approach and its "requirement that a court evaluating a constitutional challenge to an election regulation weigh the asserted injury to the right to vote against the precise interests put forward by the State as justifications for the burden imposed by its rule."  *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 189 (2008) (internal citation and quotation marks omitted). The *Crawford* Court noted that "evenhanded restrictions that protect the integrity and reliability of the electoral process itself are not invidious[,]" *id.* (citing to *Harper v. Virginia Bd. of Elections*, 383 U.S. 663 (1966)), but it cautioned that "[h]owever slight that burden may appear, as *Harper* demonstrates, it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Id.* at 191 (quoting *Norman v. Reed*, 502 U.S. 279, 288–89 (1992) (internal quotation marks omitted)).

Therefore, to determine at this stage whether Plaintiffs are likely to succeed on the merits of their constitutional claim, this Court must balance the injury to Plaintiffs' voting rights against

---

[9] This Court notes that Defendants have relied on the traditional "rational basis test" to argue that the statute at issue is constitutional.  (*See* Defs.' Mem. Contra, doc. # 9, pages 9-13; Def/Intervenors' Mem. In Opp., doc. # 8-1, pages 7-10; Defs.' Response, doc. # 44, page 4.)  Defendants assert that "[t]he only question is whether the challenged legislative scheme treats similarly situated individuals differently without any rational basis."  (Response, doc. # 44, page 4, citing to *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974 (6th Cir. 2012) (challenging a city ordinance regulating advertising) and *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985) (challenging the validity of a zoning ordinance excluding homes for mentally retarded).  Consequently, they ignore the *Anderson* balancing test.  Defendant/Intervenors do apply the *Anderson* test, *see* pages 16-17, although they characterize its application as a way to "avoid" the rational basis test, *see* page 16.

the precise interests put forward by the State Defendants, mindful of the Court's caution that even where a burden may be slight, the State's interests must be weighty.

### 1. Plaintiffs' right to vote is burdened.

According to Plaintiffs, their right to vote is unreasonably and arbitrarily burdened by ORC § 3509.03's deadline and, by extension, the Secretary of State's accompanying interpretation in Directive 2012-35. In 2005, in the wake of the 2004 election, all registered voters in Ohio could vote in person the 35 days prior to Election Day. Now, all weekend voting is eliminated for all Ohio voters, except for UOCAVA voters, who may or may not be able to vote those days depending on the county in which they live. The burden on Plaintiffs—and their members and supporters—is particularly high, they argue, because their constituency represents a large percentage of those who voted in person in the last three days before Election Day. Plaintiffs offer statistical support for these contentions, *i.e.*, studies that indicate that minority and working class voters will be disproportionately affected by the restrictions on in-person early voting. (*See* statistical overview, pages 8-9, *supra*.) Defendants do not dispute these studies nor offer any statistics to counter the argument.

Instead, Defendants argue that the burden is slight and, at any rate, it is the result of the State's need to alleviate the burden on elections boards caused by in-person early voting. Non-UOCAVA voters have 23 days in which to cast an in-person early vote, and due to Defendant Secretary of State's Directive, all of that voting will occur at boards of elections operating under an exact weekday schedule. Further, Defendants argue, Plaintiffs' claim relates to absentee voting, which is not a fundamental right and, therefore, any restriction arising out of reasonable State interests—such as alleviating the burden on elections boards—is not a constitutional

violation.  Anyway, Defendants assert, Ohio voters can just mail in their absentee ballots or vote on Election Day.

As a matter of law, this Court finds that Plaintiffs have a constitutionally protected right to participate in the 2012 election—and all elections—on an equal basis with all Ohio voters, including UOCAVA voters.  *See Dunn v. Blumstein*, 405 U.S. 330, 336 (1972); *Bush v. Gore*, 531 U.S. 98, 104-05 (2000).  Here, the State had granted the right to in-person early voting to all Ohio voters, in ORC § 3509.03 ***prior*** to HB 194.  In 2008, thousands of Ohio voters cast their votes in person in the three days prior to Election Day.  Then, the State retracted that right, imposing a 6 p.m. Friday deadline.  This Court finds that "in-person early voting" is a voting term that ***had*** included the right to vote in person through the Monday before Election Day, and, now, thousands of voters who would have voted during those three days will not be able to exercise their right to cast a vote in person.  Plaintiffs submit statistical studies to support their assertion that low-income and minority voters are disproportionately affected by the elimination of those voting days.  Therefore, the injury to Plaintiffs is significant and weighs heavily in their favor.

### 2. The State fails to substantiate its precise interests to justify the burden to Plaintiffs' right to vote.

Defendants do not counter Plaintiffs' assertion that restricting in-person early voting significantly impacts thousands of Ohio voters or that it impacts certain segments of the population more than others.  Instead, Defendants argue first that the State's action is justified to address the needs of Ohio elections boards as they prepare for Election Day, and, secondly, that the State is justified in severing the electorate into two groups—UOCAVA

16

and non-UOCAVA—to serve the particular needs of the military and, albeit to a lesser extent, overseas voters.

Defendants offer little in support of their claim that Ohio elections boards cannot simultaneously accommodate in-person early voting and pre-Election Day preparations during the three days prior to Election Day. Defendants present the declaration of Matthew Damschroder, Deputy Assistant Secretary of State. (Defs. Exh. 8, doc. # 35-8, ¶¶ 26, 27.) Mr. Damschroder describes the myriad duties required of elections boards and poll workers, from displaying a precinct map and collecting supplies to preparing the official list of registered voters which contain "notations of those voters who have already requested an absentee ballot by mail or in person in order to prevent an absentee voter from also casting a regular ballot on Election Day" pursuant to ORC § 3509.06(D). (Defs.' Memo. Contra, pages 17 – 18; *see also* Declaration of Matthew M. Damschroder, Defs. Exh. 8, ¶¶ 26, 27.)

Offering a different point of view, however, is the County of Cuyahoga, Ohio, which states that it has a great interest in providing in-person early voting to its constituents the weekend before Election Day.

> [ ]The County has a substantial interest in early voting and the outcome of this litigation. Cuyahoga County is Ohio's largest county. The County's citizens experienced substantial problems and long lines trying to exercise their constitutional right to vote during the 2004 general election. Indeed, the long lines and voting problems experienced by Cuyahoga County's citizens were a primary drive behind Ohio's introduction of early voting.
>
> [ ]Cuyahoga County provides budgetary funding to the Cuyahoga County Board of Elections. Since early voting came to Ohio in 2006, the County has taken all necessary measures and budgeted for early voting, including the last three days before the election, to protect its citizens' right to exercise their constitutional right to vote.

(Amicus Brief, Cuyahoga County, ¶¶ 2 and 3.)  Although it can speak only for itself, Cuyahoga County challenges Defendants' justification that all boards of elections are too burdened with work and budget concerns to provide equal in-person voting for *all* voters.  At a minimum, Cuyahoga County raises the question of how great a burden each county can or will bear.  There is insufficient evidence before the Court to make that determination, but the question remains. This justification is at best neutral.

At first glance, Defendants' second justification for severing the electorate into two classes appears to weigh heavily in favor of Defendants.  Military voters have almost no control over their schedules, particularly in times of sudden deployment, as detailed by the declarations of two career military officers.  (Defs. Exh. 7, Dec. of Colonel Duncan D. Aukland, and Defs. Exh. 9, Dec. of Captain Robert H. Carey, Jr.) Defendants have consistently argued that UOCAVA voters are excluded from the State's withdrawal of three extra days of in-person voting because *without those three days, UOCAVA voters may not be able to vote at all*:

> The Ohio General Assembly recognizes the nature of deployment, which can happen abruptly and unexpectedly.  For instance, members of the National Guard can be called up to active duty in order to respond to disasters, whether manmade or natural.  These call-ups can occur at a moment's time without any warning. . . .
>
> Ohio's laws, allowing UOCAVA voters the ability to cast an absentee ballot after the time during which non-military and domestic voters may do so has closed, rationally recognizes the unique circumstance that military voters may face.  **The General Assembly has provided a statutory scheme that accommodates that possibility.**

(Defs.' Mem. Contra, pages 13 – 14, emphasis added.)

Notably, though, the "statutory scheme" described by Defendants does *not* guarantee that

UOCAVA voters will be able to vote in the last three days prior to Election Day—even those suddenly deployed.  Why?  Because the Secretary of State's Directive, which carefully sets forth non-UOCAVA in-person voting times, permits local election boards to determine their hours for the last weekend before Election Day.   Defendants emphasize that whether a service member—or overseas voter—can actually vote during those three days is up to each county elections board.

> **Whether to be open those three days for in-person absentee voting by UOCAVA voters remains in the discretion of the individual county boards of election** or, as Plaintiffs recognize, the Secretary exercises his authority to issue a future directive.  **In the past, when election boards could choose to be open those three days for in-person absentee voting by any qualified voter, many were not open the entire period.**  In 2008, six of Ohio's 88 counties chose not to offer any in-person absentee voting on the Saturday prior to Election Day, **nearly all chose not to do so on that Sunday**, and all were open during their regular weekday business hours on that Monday.  *See* Doc. 35, Exhibit 8, ¶ 26.  In 2010, when fewer voters were expected, fourteen counties chose not to offer any in-person absentee voting on that Saturday, nearly all chose not to do so on that Sunday, and all were open on that Monday.  *Id.*  27.

(Response, page 2, emphasis added.)  In sum, Defendants' justification for excepting UOCAVA voters from the 6 p.m. Friday deadline—that the military *requires* this extra voting opportunity—is completely eviscerated, county by county.  In fact, according to Defendants, military voters can expect *not* to be able to vote the Saturday and Sunday before Election Day, if history is any guide.

### 3.    The State's interests are insufficient to justify the burden to Plaintiffs.

The *Anderson* Court instructs reviewing courts to test "the legitimacy and strength" of each interest put forward by the State and to "consider the extent to which those interests make it

necessary to burden the plaintiff's rights."  460 U.S. at 789.  Here, the strength of the State's interest in carving out an exception for UOCAVA voters is hardly Herculean, as protection of that interest has been left, deliberately, to each county board's discretion.  The Secretary of State emphasized the importance of "level[ing] the playing field" insofar as non-UOCAVA voting access was concerned, but he was silent regarding the three days prior to Election Day for UOCAVA voters.  He could have required all boards of election to be open Saturday, Sunday and Monday for UOCAVA voters, but he did not.  "Whether to be open those three days for in-person absentee voting by UOCAVA voters **remains in the discretion of the individual county boards of elections**" or the Secretary of State in the form of future directive. (Defs.' Response, page 2.)  This Court reads the Secretary's silence to underscore that the protection of the three additional days of in-person early voting to UOCAVA voters is not a strong state interest.

From the onset of this litigation, Defendants have pointed to special concerns for the military—concerns all parties share—and the military's need to maintain additional access to in-person early voting.  But for UOCAVA voters, what is left is, potentially, one day: Monday.  Defendants have presented no evidence to sustain the inference that in-person early voting on Monday—one day—will burden county boards of elections to the extent that the injury to Plaintiffs is justified.  Moreover, Defendants undercut the virtue of their support of military voters by failing to protect any significant measure of UOCAVA voting.  Unless a serviceperson is "suddenly deployed" at exactly the right time—enabling in-person voting on Monday—he or she will likely be unable to vote, depending on the local elections board's "discretion."  That the State cannot justify its interest in foreclosing Ohio voters for one day emphasizes the arbitrary nature of its action.

Finally, this Court notes that restoring in-person early voting to all Ohio voters through the Monday before Election Day does not deprive UOCAVA voters from early voting. Instead, and more importantly, it places all Ohio voters on equal standing. The only hindrance to UOCAVA early voting is the Secretary of State's failure to set uniform hours at elections boards during the last three days before Election Day.

On balance, the right of Ohio voters to vote in person during the last three days prior to Election Day—a right previously conferred to all voters by the State—outweighs the State's interest in setting the 6 p.m. Friday deadline. The burden on Ohio voters' right to participate in the national and statewide election is great, as evidenced by the statistical analysis offered by Plaintiffs and not disputed by Defendants. Moreover, the State fails to articulate a precise, compelling interest in establishing the 6 p.m. Friday deadline as applied to non-UOCAVA voters and has failed to evidence any commitment to the "exception" it rhetorically extended to UOCAVA voters. Therefore, the State's interests are insufficiently weighty to justify the injury to Plaintiffs. *See Anderson v. Celebrezze*, 460 U.S. 780, 798 (1983).

The issue here is ***not*** the right to absentee voting, which, as the Supreme Court has already clarified, is not a "fundamental right." *McDonald v. Bd. of Election Commissioners*, 394 U.S. 802, 807 (1969). The issue presented is the State's redefinition of in-person early voting and the resultant restriction of the right of Ohio voters to cast their votes **in person** through the Monday before Election Day. This Court stresses that where the State has authorized in-person early voting through the Monday before Election Day for all voters, **"the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."** *Bush v. Gore*, 531 U.S. 98, 104-05 (2000). Here, that is precisely what the State has done.

21

As a result of the foregoing, this Court finds that Plaintiffs are likely to succeed on the merits of their claim.

**B.**     ***Remaining Factors***

Plaintiffs will suffer irreparable injury if in-person early voting is not restored the last three days before Election Day, and there is no definitive evidence before the Court that elections boards will be tremendously burdened.  Certainly, the public interest is served by restoring in-person early voting to all Ohio voters.  "Our form of representative democracy is premised on the concept that every individual is entitled to vote on equal terms, and each individual's vote carries the same value as every other vote."  *Doe v. Walker*, 746 F.Supp.2d 667, 682 (D. Maryland, 2010) (citing *Baker v. Carr*, 369 U.S. 186 (1962)).  Restoring in-person early voting to all Ohio voters through the Monday before Election Day returns to voters the same opportunity to vote as previously conferred under Ohio law.

**V.     CONCLUSION**

For the reasons discussed above, this Court hereby **GRANTS** Plaintiffs Obama for America, Democratic National Party, and Ohio Democratic Party's Motion for Preliminary Injunction.  (Doc. # 2.)  The Court **DECLARES:**

That Ohio Revised Code § 3509.03 is unconstitutional to the extent it changes the deadline for in-person early voting ***from*** the close of business on the day before Election Day ***to*** 6 p.m. on the Friday before Election Day; ***and***

That Substitute Senate Bill 295's enactment of Ohio Revised Code § 3509.03 with the Amended Substitute House Bill 224 amendments violates the Equal Protection Clause of the United States Constitution.

**FURTHER,** this Court **HEREBY ORDERS** that the State of Ohio through Defendant Secretary of State Jon Husted **IS ENJOINED** from implementing or enforcing Ohio Revised Code § 3509.03 in Amended Substitute House Bill 224 and/or the Substitute Senate Bill 295 enactment of Ohio Revised Code § 3509.03 with the Amended Substitute House Bill 224 amendments; *and*

**IT IS FURTHER ORDERED** that in-person early voting **IS RESTORED** on the three days immediately preceding Election Day for all eligible Ohio voters. And specifically, for the purposes of the 2012 General Election, this Order restores in-person early voting to all eligible Ohio voters on Saturday, November 3, 2012; Sunday, November 4, 2012; and Monday, November 5, 2012. This Court anticipates that Defendant Secretary of State will direct all Ohio elections boards to maintain a specific, consistent schedule on those three days, in keeping with his earlier directive that only by doing so can he ensure that Ohio's election process is "uniform, accessible for all, fair, and secure."

**IT IS SO ORDERED.**


/s/ Peter C. Economus_____
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**

23